**UNITED STATES of America**

v.

**William B. McPHERSON, Appellant.**

**No. 22312.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1969.

Decided Oct. 2, 1969.

Mr. John H. Caldwell, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert P. Watkins, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

BAZELON, Chief Judge:

Appellant, who was released on bail during his trial for petit larceny and second degree burglary, failed to return to court at the designated time. After

a day's delay, his trial was continued without him. He contends that the District Court erred in proceeding with the trial in his absence since he made no competent waiver of his sixth amendment rights. He challenges only his five-to-fifteen-year burglary sentence and concurrent one-year larceny sentence; he raises no objection to the consecutive five-year sentence for bail jumping which was imposed at the same time.

## I.

In December 1967, two police officers, responding to a housebreaking call, apprehended appellant in the hallway of an apartment building carrying a radio which belonged to a resident of the building. Appellant was taken into custody, and bail was set at $5,000, which appellant was unable to meet. Following a January 3, 1968, preliminary hearing, appellant was indicted on February 28 for second degree burglary, 22 D.C.Code § 1801(b), and petit larceny, 22 D.C.Code § 2202. On March 15, 1968, appellant was arraigned and pled not guilty to both counts. The following week the Court of General Sessions reviewed his conditions for release and reduced money bond from $5000 to $1000. As appellant was still unable to raise bail, his counsel filed a motion on April 1 requesting that appellant be released to the third party custody of Bonabond, Inc.[1] At the commencement of trial on Thursday, April 18, the court reserved ruling on the Motion to Amend Conditions of Release until the following day. After receiving the testimony of the two policemen who had arrested appellant, the trial was ad-journed and the jury dismissed until Monday morning.

On Friday, April 19, 1968, the court held a hearing on the bond review motion. The appellant explained that he sought his release in order to locate witnesses for his defense. Bonabond, Inc., expressed its willingness to act as third party custodian for appellant, and the court released appellant to that organization, after informing him that he was to appear at 9:45 a. m. on Monday, April 22, 1968. The appellant failed to appear on Monday morning, and a recess to that afternoon likewise failed to produce him. On Tuesday morning, defense counsel informed the court that efforts to locate the appellant had been unsuccessful and recommended that the judge declare a mistrial since appellant was the only defense witness and without him there was no defense case. The trial court chose, over defense counsel's objection, to continue the trial in appellant's absence under authority of Rule 43 of the Federal Rules of Criminal Procedure.[2] Following the close of the Government's case, defense counsel's motion for judgment of acquittal was denied; counsel then waived his opening statement and simply stated for the record that continued efforts to locate appellant had proved unsuccessful. The trial court then ruled that appellant's absence from trial was voluntary and sent the case to the jury,[3] which returned guilty verdicts on both counts of the indictment. Appellant was apprehended on May 2, 1968. At sentencing hearing on August 2, 1968, the court inquired into the circumstances surrounding the appellant's failure to

---

1. Bonabond, Inc., is an arm of the United Planning Organization, Washington's anti-poverty agency, staffed by ex-convicts. Among its functions, it supervises recognizance bonds for selected indigent defendants.

2. Rule 43 provides in pertinent part:
   The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.

3. Because of our disposition of this case, we do not have to reach appellant's contention that in his absence it was plain error for the trial court to give the jury the instruction permitting an inference of guilt from unexplained possession of recently stolen property.

appear at trial and again ruled that his absence had been voluntary.

## II.

■ The right to be present at trial which inheres in the sixth amendment and has been codified by Rule 43 of the Federal Rules of Criminal Procedure, has long been recognized as being of fundamental importance to the just administration of the criminal law. Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Cross v. United States, 117 U.S.App.D.C. 56, 58, 325 F.2d 629, 631 (1963). Faced with a defendant who was not present at a portion of his trial and was thus unable to testify in his own behalf,[4] the courts have the serious responsibility of determining whether "it is clearly established that his absence [was] voluntary." Cureton v. United States, 130 U.S.App.D.C. 22, 396 F.2d 671, 676 (1968).

To comprehend defendant's story of his search for two witnesses we must attempt to appreciate the environment in which he moves. To men with numbers and addresses in the telephone directory, fixed office hours and secretaries, it may seem dubious that defendant was making an honest and diligent effort to locate witnesses when he was out "on the streets where they generally hang out" from Friday when he was released on bond to Sunday when he went to sleep, "[l]ooking and hoping to see these people or at least learn their residences." Of course, it is uncontroverted that his search did not bear fruit,[5] that he subsequently became depressed for personal reasons and got drunk, and that, although not in hiding, he failed to contact his lawyer or the court and could not be found by Bonabond.

■■ But whatever the implausibility of McPherson's narrative, the voluntariness of his absence from the courtroom must be determined by whether the warning given him was sufficient. As this court made clear in Cross v. United States, supra, we will look to the standards set forth in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938) when the government claims a defendant waived his rights under the sixth amendment and Rule 43. In Johnson v. Zerbst the Supreme Court defined constitutional waiver as "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023 (emphasis added).[6] *Cross* estab-

---

4. The continuation of the trial in his absence seriously prejudiced appellant, who desired to explain his possession of the goods which the government witnesses identified as having been removed from the apartment building in which appellant was apprehended. There seems to be no doubt that his intention to testify was serious, since he had previously received the trial judge's assurance that he could do so without being impeached by his criminal record. Since no one testified for the defense, the effect of the instruction on the inference which may be drawn from the unexplained possession of recently stolen property was to assure a guilty verdict.

5. McPherson testified that he learned one witness had died of an overdose of narcotics in Baltimore. When McPherson stumbled upon the other witness, he displayed his determination not to cooperate by shooting at McPherson and fleeing;

McPherson claims to know this witness only by sight and not by name.

6. The Johnson v. Zerbst standard of "intelligent and competent waiver," 304 U.S. 458, 58 S.Ct. 1019, was applied in that case to the right to be assisted by counsel. This standard has also been held to govern the waiver of other constitutional rights, e. g., the fifth amendment privilege against self-incrimination, Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974 (1966) ["voluntarily, knowingly and intelligently"], Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) ["intelligently and knowingly"], and Proctor v. United States, 131 U.S.App.D.C. 241, 243, 404 F.2d 819, 821 (1968) ["intelligently and understandingly"]; the right to trial by jury, Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L. Ed. 268 (1942) ["express, intelligent"]

lishes that it is not merely the right to be present but its corollary, that the trial not continue when one is *not* present, which must be intelligently waived.

### III.

█ In the present case, the trial judge is to be commended for his insistence in making clear that he expected appellant to be present when the trial resumed.[7] It would be difficult to believe that appellant was unaware that serious consequences would follow his failure to appear. Indeed, appellant as much as acknowledged this by pleading guilty to jumping bail, for which he was sentenced to imprisonment for a term of not less than five years, to run *consecutively* to his five to fifteen year burglarly sentence. But the question still remains whether the appellant was apprised that besides bail ·jumping penalties an additional consequence would be the continuation of trial in his absence, which was tantamount to a guilty plea.

To secure his release on bail, appellant signed Part IV of the "Order Specifying Methods and Conditions of Release" (Bail Reform Act Form No. 2), in which he stated that he understood "the penalties and forfeitures applicable in the event that I * * * fail to appear as required." Yet the only penalty listed on Form No. 2 is that "an additional criminal case may be instituted." There is no specific warning of any other consequences set forth on the form nor was any delivered by the court, advising that if the defendant voluntarily absented himself he would be deemed to have waived his constitutional right to testify and to confront the witnesses against him so that the trial could continue without him.

Absent such warning, it was incumbent on the court to determine whether the appellant knew in fact that his trial would go on without him. Neither defense counsel nor the Government developed facts in the District Court on which to rest an adequate consideration of this issue. Although his claim appears dubious, we are constrained to remand this case to afford appellant the opportunity to develop factual support for his contention that his absence was not truly voluntary since it was not a waiver

and Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930) ["express and intelligent"]; and the combination of rights relinquished through a guilty plea, Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ["intelligent and voluntary"], and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In the latter case, the Supreme Court explicitly reaffirmed the standard enunciated by Johnson v. Zerbst, applying it to guilty pleas under Rule 11 of the Federal Rules of Criminal Procedure, 394 U.S. at 466, 89 S.Ct. 1166. In *McCarthy*, defense counsel informed the District Court that the defendant had been advised of the consequences of a guilty plea; defendant then stated that his plea was not a product of threats or promises and that he understood that such a plea waived his right to jury trial. However, after he had been sentenced, defendant moved to set aside his plea because the trial judge had not personally addressed him to determine that the plea was voluntary. The Court of Appeals affirmed, but the Supreme Court reversed. The Court held that as the defendant's plea amounted to a waiver of his rights to confrontation and trial by jury, "it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts" and "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." 394 U.S. at 466, 89 S.Ct. at 1171.

7. Immediately before the trial court ordered the appellant released on bond, the following exchange took place:

THE COURT: Monday morning at 9:45 there will be no excuses whatsoever accepted by this Court for your failure to appear. Do you understand?

THE DEFENDANT: I will be here. I will be here.

THE COURT: Not sickness, anything—there is only one thing that can happen to you in the interim, and I am not wishing that upon you. But aside from that, you will be here.

THE DEFENDANT: I will. (Tr. 41).

of a "known right." Johnson v. Zerbst, *supra;* Cureton v. United States, *supra.*

The judgment below is vacated and the case is remanded; if the District Court concludes that appellant knowingly waived his right to be present at trial, it may reinstate the judgment; otherwise, the appellant must be afforded a new trial at which he will have the opportunity (unless he knowingly and voluntarily foregoes it) to appear and recite his story

Remanded.

TAMM, Circuit Judge (dissenting):

The real question in this case is not whether the defendant knew that the trial could proceed in his absence but whether he knew that he had a right to be present at his trial and waived it. The majority seems to recognize this when it speaks of a remand to enable the defendant "to develop factual support for his contention that his absence was not truly voluntary *since it was not a waiver of a 'known right.'* " (Majority opinion at 1130; emphasis added.) The right that was involved was the right to be present. Thus it follows that if the defendant knew or should have known that he had a right to be present, his voluntary absence (and there is no doubt that his absence was voluntary) was a waiver of that "known right."

While Rule 43 of the Federal Rules of Criminal Procedure, in implementing the mandate of the sixth amendment, requires a defendant to be "present * * * at every stage of the trial," it permits, "[i]n prosecutions for offenses not punishable by death, the defendant's *voluntary* absence after trial has been commenced in his presence * * *." Fed. R.Crim.P. 43. (Emphasis added.) We have construed this rule as providing "that if a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." Cureton v.

United States, 130 U.S.App.D.C. 22, 27, 396 F.2d 671, 676 (1968). Moreover, the oft-quoted case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), speaks of a "proper" and "intelligent" waiver as being one that "must depend, in each case, upon the particular facts and circumstances surrounding that case, including background, experience, and conduct of the accused." 304 U.S. at 464, 58 S.Ct. at 1023. Applying these principles to the present case we find that the appellant was the possessor of the "worst" criminal record that the trial judge had seen in his twenty months on the criminal trial bench. (Sent. Tr. at 7–8.) This record shows a history of over 20 convictions and 40 arrests within the span of 28 years. (Sent. Tr. at 7.) His "background" and "experience" were, at the very least, broad. Regarding his conduct, we note that after beginning appellant's non-capital trial in his presence (McPherson had been in jail up to and including his first day of trial), the trial judge permitted McPherson's release for the purpose of locating witnesses. Upon the urging of the Government, however, the judge cautioned the appellant that the trial would resume on Monday morning at 9:45:

THE COURT: [T]here will be no excuses whatsoever accepted by this Court for your failure to appear. Do you understand?

THE DEFENDANT: I will be here. I will be here.

THE COURT: Not sickness, anything—there is only one thing that can happen to you in the interim, and I am not wishing that upon you. But aside from that, *you will be here.*

THE DEFENDANT: *I will.*

(Emphasis supplied, Tr. 41.)

The defendant wasn't there on Monday when a bench warrant issued, nor on Tuesday when the trial resumed over his counsel's objection. In his absence, he was convicted.

At the time of sentence, McPherson attempted to explain his absence. He said

that he fell asleep Sunday night and did not awaken until Monday evening at 4:30 (Sent. Tr. at 5). He related that upon arising he did not attempt to contact anyone nor did he attempt to contact the court or his counsel during the ensuing days of his absence when he was "back in the street" looking for witnesses (Sent. Tr. at 6). Upon this testimony,[1] the court found his absence voluntary. I do likewise. *Cureton,* Rule 43 and the Sixth Amendment have been followed.

I would affirm.

---

1. Between the time of conviction and imposition of sentence McPherson was arrested and again brought to jail. While in jail awaiting sentence he wrote a letter to the trial judge apologizing for his poor judgment and explaining, in great detail, the facts surrounding his absence. My reading of that letter convinces me that this appellant had full knowledge of the consequences of his acts and had no intention of returning to the courthouse unless forced. He knew his rights and knew his chances—he chose to take the latter.