STATE of Maine

v.

Gary C. STAPLES.

STATE of Maine

v.

Barry A. BRANN.

Supreme Judicial Court of Maine.

March 31, 1976.

Thomas E. Delahanty, II, Dist. Atty., John Wilson, Law Student Intern, Farmington, for plaintiff.

Holmans' Law Offices, by Ronald J. Cullenberg, Farmington, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

Co-defendants Gary Staples and Barry Brann were separately indicted for breaking, entering and larceny in the nighttime (17 M.R.S.A. § 2103) and tried before a jury in the Superior Court of Franklin County on December 16 and 17, 1974. At the start of the trial and without objection from counsel, the Court consolidated the cases of the two defendants for trial. Of the four witnesses presented by the State, the most damaging doubtless was a 19-year-old inmate of the Men's Correctional Center, Robert Dustin. Dustin claimed to have been a co-conspirator with the defendants and his testimony, if believed, would have left little doubt that the defendants had committed the crime as charged. He further stated that he had pled guilty to a charge of breaking, entering and larceny in the daytime, based upon this same criminal act, and was then serving an indefinite sentence at South Windham for this offense.

Prior to the cross-examination of this witness by defendants' counsel, the Court recessed. At some point during the recess, the Court was informed that Staples was no longer in the courthouse. The Court was also notified that Brann wished to withdraw his plea of not guilty and plead guilty to the indictment pending against him. Out of the presence of the jury, the Court then interrogated Brann pursuant to M.R. Crim.P., Rule 11 as to the circumstances surrounding his change of plea. Satisfied that the defendant fully understood the nature of the crime to which he pled and that his change of plea was voluntarily made, the Court accepted the defendant's plea and sentenced him to 3½ to 10 years in the Maine State Prison. The record does not show that either the Court or the defendant's counsel attempted to determine whether Staples' absence was a factor in the defendant's decision to change his plea.

After notification by counsel that Staples was no longer in the courthouse, the Court extended the recess while a search for that defendant was undertaken. When it became clear that Staples could not be located, the Court decided to continue the trial against him in his absence and ordered a warrant to issue for his arrest. The presiding Justice concluded that Staples' absence was voluntary and advised the jury that the case of Barry Brann was no longer before it. Defense counsel objected to the continuation of the trial in the defendant Staples' absence but was overruled. Defense counsel, although doubtless dismayed by the surprising turn in events, continued a strenuous defense of Staples. He cross-examined Robert Dustin at length and then made his final argument to the jury in the absence of the defendant. The jury reached a verdict of guilty and Staples was, after his eventual apprehension, sentenced to 5 to 15 years in Maine State Prison. Both defendants appeal, urging a number of errors in the trial below. We deny the appeal of defendant Staples and dismiss the appeal of defendant Brann.

*The Constitutionality of Maine Rules of Criminal Procedure, Rule 43*

Staples claims that the continuation of the trial in his absence denied him due process and his right to confront witnesses against him as guaranteed under the sixth amendment of the United States Constitution and art. 1, § 6 of the Maine Constitution. This defendant first argues that the right of an accused to be present during trial is so essential to the requirement of a fair trial that no defendant accused of a felony should be permitted to waive that right. We do not agree.

M.R.Crim.P., Rule 43 [1] required the defendant's presence at trial on felony

1. "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury, and the return of the verdict, and at the imposition

charges but, in any trial where the potential penalty is not a life sentence, allowed the trial to continue when the defendant has voluntarily absented himself if he was present at the start of the trial. In this regard, our Rule 43 is similar to Fed.R. Crim.P., Rule 43 which allows the defendant to waive his right to be present where the offense for which he is being tried is non-capital. The United States Supreme Court has examined Fed.R.Crim.P., Rule 43 and concluded that the criminal defendant's voluntary absence from trial does not deprive him of his constitutional rights. *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).

■ The rule was not always so. At one time the presence of a criminal defendant accused of a felony was an absolute precondition for the continuation of the trial against him. *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). Yet, as evidenced by the Maine and Federal Rules of Criminal Procedure, Rule 43, the categorical prerequisite of the defendant's presence during a trial against him has eroded. The apparent genesis of the modern rule is *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500, (1912) in which the Court stated:

". . . [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner

and with like effect as if he were present."

The policy underlying this rule permitting the presiding Justice, in his discretion, to continue a trial when a defendant voluntarily absents himself is obviously sound. If a mistrial were to be declared whenever the defendant voluntarily absented himself from trial, the defendant could, after evaluating the course of the proceedings against him, simply leave the courtroom whenever he anticipated an adverse verdict. His voluntary absence would then entitle him to a fresh trial and a second chance at acquittal. The defendant's right to his day in court does not permit him unilaterally to select whatever date his pleasure dictates. M.R.Crim.P., Rule 43 is not constitutionally infirm.

### Conduct of the Proceedings in Staples' Absence

When the presiding Justice was notified that the defendant had left the courthouse, he extended the recess another hour while the defendant's counsel attempted to locate the defendant. Then, after inquiring of the defendant's counsel as to the circumstances of the defendant's leaving the courthouse, the presiding Justice found that the defendant's absence was voluntary and, over counsel's objections, ordered that the trial continue.

■ The defendant now urges us that due process entitled the defendant to notice and hearing on the issue of the voluntariness of his departure. There can be no doubt that "the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents

---

of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by life imprisonment, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for less than one year, or both, the court may permit arraignment,

plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at proceedings for post-conviction relief under Rule 35(b), although the court may require the defendant's presence.

Effective April 1, 1976 "not punishable by life imprisonment" was changed to read "except criminal homicide in the 1st or 2nd degree".

the trial from going forward." *Illinois v. Allen*, 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353, 362 (1970). Although only a voluntary absence can justify the trial continuing in a defendant's absence, it is obvious that if a departed defendant has to be found and notified of an opportunity to be heard on the voluntariness of his absence before the trial can continue, an escaping defendant could force the court to declare a mistrial or keep the jury waiting until the defendant could be found and returned.

■ It would seem clear that the public interest in the orderly determination of criminal charges would be frustrated by long suspension of trials while authorities attempted to find and return defendants to the . courtrooms. Equally unacceptable would be the maintenance of custody over all defendants for the duration of trials in order to prevent such absences. We are certain that due process—judicial fair play —is observed in such a situation when a Justice (1) makes sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) makes a preliminary finding of voluntariness (when justified), and (3) affords the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed. (Of course, if the Justice was then satisfied that the defendant's absence was not voluntary, he would order a new trial.)

We are satisfied that each of these requirements was met here.

*The Standard by Which the Constitutionality of the Waiver is to be Measured*

■ While Rule 43 speaks of a defendant's *voluntary* absence we must bear in mind that we are concerned with a waiver of the right of confrontation guaranteed by the sixth amendment of the Constitution of the United States and by article I, § 6 of our own Constitution. Such a waiver must be "an intentional re-linquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Recently, the Court reaffirmed the necessity of an application of this standard to a defedant's decision to forego those rights constitutionally guaranteed to assure a fair criminal trial and to protect the "reliability of the truth-determining process." *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854, 868 (1973). We have no doubt that a defendant's opportunity to confront his accusers and assist his counsel concerning evidentiary facts bears heavily upon the reliability of the truth determining process. *State v. Pullen*, Me., 266 A.2d 222 (1970). The defendant's waiver of presence at trial must then be not only a voluntary but also a knowing waiver.

The defendant now argues that to meet this standard, a presiding Justice must be able to find that a departing defendant was fully aware not only of his right to be present at his trial but also that if he absented himself his trial might continue in his absence and that he might thus never be able to avail himself of the opportunity to confront witnesses who appear against him and to assist his counsel in the evidentiary problems of trial. This was the holding of *United States v. McPherson*, 137 U.S.App.D.C. 192, 195, 421 F.2d 1127, 1130 (1969) cited by the defendant, but which was rejected by the United States Supreme Court in a unanimous per curiam opinion in *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). Although the Court's reasoning in *Taylor* is not fully explained, the opinion points out, significantly, that the right at issue is the right to be present. We understand the Court to be distinguishing between one's right to be present at trial and the right to absent oneself from trial. *See* Dissenting opinion of Judge Tamm in *United States v. McPherson*, supra.

■ The constitutional right to be present is designed to affect the State's

treatment of the accused by ensuring that it provides him with the *opportunity* to be present. Once that opportunity is provided the accused has no constitutional right to unilaterally absent himself from his trial. *Cureton v. United States*, 130 U.S.App.D.C. 22, 396 F.2d 671, 673 (1968); *See Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3, 6 (1951). In this respect, the right to be present at trial must be distinguished from those constitutional rights which offer alternative choices such as the fifth amendment right to silence (one is free to confess or to remain silent) or the fourth amendment right to be free from unreasonable searches and seizures (one may decide to permit the search or one may refuse it). The constitution does not require that he be made aware of the consequences of a choice to absent himself during his trial as he has no constitutional right to make such a choice.

While the waiver concept furnishes a fair standard for testing the public right to continue with the trial in a defendant's absence, we are really talking about intentional conduct of a defendant, unsanctioned constitutionally, which cannot be permitted to frustrate the orderly determination of guilt or innocence. The voluntariness of an accused's waiver of a constitutional right is a flexible concept and may be determined from "the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2048, 36 L.Ed. at 863. It may be inferred from a defendant's conduct. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

Here, the defendant, a man of 33, with a record of felony convictions which were known to the readers of these opinions (which no doubt included this presiding Justice), had spent the morning attending his trial and had just heard his youthful companion in crime testify for the State, an occurrence which probably convinced him of the hopelessness of his situation. Immediately following this, the defendant, had left the courthouse at trial recess, say-

ing that he was going to get a cup of coffee. An hour and ten minutes later he had not returned and his attorney was unable to find him. Certainly, the Justice was entitled to conclude—for the purposes of continuation of the trial—that the defendant knew he was entitled to be present at his trial and that his departure was a voluntary one, made in hopes of avoiding an unfavorable verdict. The defendant's appearance before the Justice prior to sentence two weeks later, after his apprehension, only supported the correctness of the Justice's preliminary conclusion. His explanation of his conduct was ". . . I guess I got scared and took off is all."

*Did the Court Lose Jurisdiction to Sentence the Defendant Staples?*

The defendant Staples' next claim of error is that

"The Court, in imposing a five to fifteen year sentence on defendant Staples, while for the same offense tried at the same trial sentenced co-defendant Brann to three and one-half to ten years arbitrarily and without jurisdiction imposed a sentence which took into consideration Staples' unaccounted for absence from trial."

The statutory procedure for review of the substance of a sentence to the Maine State Prison is by an appeal to the Appellate Division of this Court as authorized by 15 M.R.S.A. § 2142 and implemented by M.R.Crim.P., Rule 40. *State v. Millett*, Me., 273 A.2d 504 (1971). We may now, on direct appeal, examine only defendant Staples' claim that the length of his sentence, when compared with that given his co-defendant Brann, demonstrates that the presiding Justice took into consideration the fact that he had run away during trial. He contends that when the Justice did this, he acquired a prejudice which resulted in a loss of jurisdiction to sentence the defendant Staples. The defendant Staples' claim is in substance that of a denial of due process.

▮ Defendants Staples and Brann were the same age and had had substantial records of convictions of felonies of similar natures. At the time of sentence the presiding Justice engaged in a lengthy colloquy with defendant Staples in which he twice told the defendant he was giving him a lengthier sentence than he imposed on defendant Brann because he believed Staples was "the brains of the organization", although the Justice's basis for this conclusion is not apparent from the record. The Justice also made clear that he considered Staples' absenting himself from his trial an indication of a basic lack of character—an inability to "face up to what you have got to face up to" (defendant Staples had previously been convicted of escape for running away from a prison work release program)[2]—which suggested little hope of rehabilitation. The Justice obviously had in mind that defendant Brann, in contrast, had recognized his situation and "take[n] his medicine".

We said in *Green v. State,* Me., 247 A.2d 117, 120 (1968):

"The constitutional due process clause does not freeze the sentencing procedure in the mold of trial procedure, and a sentencing judge may exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by law."

▮ We have no doubt that the Justice's observation of the conduct of the defendant during the trial may be utilized by him in understanding the defendant's personal susceptibilities to criminal conduct and in determining the punishment appropriate to protect the public interest. He was not required to exclude defendant Staples' act of absconding as a factor in these determinations.

We find no denial of constitutional due process.

The defendant Staples has also used this issue of judicial prejudice as a sort of catch-all for other obliquely stated claims of error, not raised at trial, which may be consolidated, in the language of his brief, as a contention that

"[t]he sum total of the trial justice's comments and instructions to the jury were a calculated, though perhaps unknowing, plan of prejudice against the innocence of the absent defendant."

▮ First, the defendant notes that the presiding Justice told the jury, when the trial resumed without the defendant Staples, that the defendant had disappeared and trial would continue without him, adding:

". . . I assume it to be a voluntary act on the part of Mr. Staples and, if anything is prejudicial, he has brought the prejudice upon himself."

The defendant Staples argues that this statement "practically invited . . . an inference [of guilt]." We do not come to this conclusion. We are satisfied that the jurors understood that the Justice was telling them that if the defendant was now handicapped in his defense, it was the result of his own action. We see no danger that they construed it as an invitation to infer guilt, especially in view of his careful instructions to the contrary.

The Justice had little precedent to guide him in this unusual situation. The jury, of course, noticed the absence of defendant Staples at the counsel table and it was the Justice's responsibility to inform the jurors of the new situation in a manner which would not be unfair to either the State or the defendant. Obviously he could not restore to the defendant the potential advantages afforded by his presence at trial such as assisting counsel in evidentiary matters and taking the stand to refute adverse testimony without aborting the trial and starting a new one after

2. So had defendant Brann.

defendant had again been apprehended—a procedure certainly not in the public interest. The best a Justice can do is to present the matter in a way which will avoid arousing resentment on the part of the jurors which might prevent an impartial determination of guilt or innocence, to the defendant's detriment.

On the other hand, the public interest demands that an absconding defendant should not through jury sympathy gain an *advantage* by his departure which might also prevent an impartial verdict. The State is entitled to have the jury know that no unjust governmental action has prevented the defendant from being present at his trial.

Therefore, when it is feasible, the jury should be informed only that the defendant has made *a choice not to be present* at the trial. In situations where the knowledge of a defendant's absconding cannot reasonably be kept from the jury—for example, a defendant could run away from the courtroom in the very presence of the jury—the Court may rely upon an instruction that the defendant's act of fleeing must not be given weight on the issue of guilt or innocence.

Here, the jury did learn from the brief colloquy between the Justice and defense counsel that the defendant Staples had failed to return to the courthouse and that his attorney could not find him and the Justice announced his finding that the defendant's absence was voluntary in the jury's presence.

Although the jury thus learned that the defendant's absence was apparently an absconding, there was no objection to this information being given the jury. Although *this* could and should have been kept from the jury, when we examine the situation under the manifest error rule (M.R.Crim.P., Rule 52(b)) we are not satisfied that making the jury aware of the apparent nature of the defendant's absence demonstrated evidence of a calculated plan of prejudice against the defendant.

On three occasions the Justice instructed the jury that the defendant's absenting himself from the trial should not be considered as bearing on the question of guilt or innocence. When the Justice told the jurors that "if anything is prejudicial, he has brought the prejudice upon himself" he was only articulating the obvious fact that no one but the defendant himself is at fault for the trial handicaps that an absent party is likely to suffer.

Second, the defendant argues that evidence of the Justice's "plan of prejudice" may be found in the "tenor of his comments about breaking, entering and larceny in the nighttime" which he argues "were directed to dispel any notion that the alleged crime did not occur squarely in the nighttime." Defendant's trial counsel evidently drew no such a conclusion from the Justice's instructions as no objections were made. Neither can we draw such a conclusion. The Justice made three references to the necessity that the State prove the crime was committed in the nighttime:

> "Once such a forcible entry has been made into the building, there must be a larceny of goods or property of another on the inside, and again this must be the goods or property of some value, and it is immaterial how much value is involved, whether you take goods worth $5 or $500,000 is immaterial so long as you take property of some value that belongs or is in the rightful possession of some other person, and you must then remove it from the premises, and if you do, it's [sic] in the nighttime, then the specific elements of this crime are then all satisfied.
>
> .   .   .   .   .   .
>
> .  .  . and if you do it in the nighttime the law distinguishes between breaking and entering and larceny that takes place in the daytime and that takes place in the nighttime and the nighttime is, as you generally know it, when it is dark. It also is a period of time, could

be a period of time, when it is not dark. Those of you who are familiar with the regulations as they relate to hunting, the hunting season, the law sets up a period of time. I don't think it is particularly applicable in this case because of what the testimony has been, but again, I think it begins at one-half hour after sunset and runs through until one-half hour before sunrise of the following morning, and this is the legal definition of nighttime, and obviously at certain times of the year within this particular time phase, you could have daylight but nevertheless, you could be operating in a legal nighttime.

But again, the responsibility is on the part of the State to establish that if anything was done, if there was a breaking and entering and larceny of property that it was done during the nighttime and I would say to you that if it was done when it was dark, that is the night."

While the Justice's reference to the statutes concerning hunting could not have been particularly helpful we see no possibility that it could have confused the jury, especially as the only evidence presented concerning the precise time of the break, with which no other evidence conflicted in any way, was that it occurred shortly after midnight. Certainly, this language cannot reasonably be said to suggest a "calculated . . . plan of prejudice".

■ The defendant Staples further attempts to support this claim of planned prejudice by pointing out that the youthful associate of Staples and Brann, in the same criminal transaction, was permitted to plead guilty to breaking, entering and larceny in the *daytime* which carries a lesser maximum penalty. While there is a superficial inconsistency in the differing convictions of two participants in the iden-

tical act the result does not, as the defendant contends, make a mockery of the judicial system. By permitting Dustin to plead guilty to an offense carrying the lesser of two possible penalties, the State was, no doubt, rewarding him for his cooperation in the investigation and solution of the crime and the Justice could properly permit it. It is not unconstitutional for the State to benefit a criminal defendant who has benefitted the State. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

*The Defendant Brann's Claims of Error*

■ The defendant Brann also filed a notice of appeal from his conviction and urges us that he was in effect coerced into his withdrawing his plea of not guilty and entering a plea of guilty by the Justice's order of consolidation of his case with Staples and Staples' subsequent departure from their trial. The record demonstrates that the presiding Justice carefully examined the defendant Brann as to the voluntariness of his plea and no indication that it was not completely voluntary is apparent.

We examined the effective area of review on direct appeal from a conviction resulting from a plea of guilty in *Dow v. State*, Me., 275 A.2d 815, 820 (1971) and concluded that a direct appeal based upon involuntariness of a plea of guilty lies only upon denial at the trial court level of a timely motion to withdraw the plea. No such foundation for an appeal is present here.

The entries will be:

The defendant Staples' appeal is denied.

The defendant Brann's appeal is dismissed.

DELAHANTY, J., did not sit.