2006 ME 83

**STATE of Maine**

v.

**Luke TUPLIN.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Sept. 13, 2005.

Decided: July 6, 2006.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Attorney, Portland, for State.

Luke Tuplin, Lisbon, for Defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, and LEVY, JJ.

Dissent: DANA, CALKINS, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] We are called upon here to address the procedure constitutionally required of the trial court when a defendant must make the election to exercise his right to testify on his own behalf or his competing right to remain silent. Luke Tuplin appeals from a judgment of conviction entered by the Superior Court (Cumberland County, *Cole, J.*) upon a jury verdict finding him guilty of one count of assault (Class D), 17–A M.R.S. § 207(1)(A) (2005). Tuplin contends, among other things, that he was denied his constitutional right to testify at trial. We conclude that he waived that right, and we affirm the judgment.

## I. BACKGROUND

[¶ 2] Tuplin was charged with one count of assault (Class D), 17–A M.R.S. § 207(1)(A), and one count of disorderly conduct (Class E), 17–A M.R.S. § 501(1)(C) (2005). He pleaded not guilty on both counts and was tried by a jury on February 15, 2005. The State dismissed the count of disorderly conduct, but the assault charge proceeded to trial.

[¶ 3] At the trial, where Tuplin represented himself, the State presented the testimony of six witnesses and rested. After excusing the jury, the court instructed Tuplin as follows:

> [I]f you wish to you can present evidence. You can have other witnesses testify, or you can testify yourself. You are never compelled to testify or present evidence, but if you wish to do so you have the opportunity, you understand that?
>
> MR. TUPLIN: Yes.
>
> THE COURT: All right, and do you know what you are going to do?
>
> MR. TUPLIN: No, sir, I don't.

[¶ 4] After this exchange, the court recessed briefly to allow Tuplin to decide whether he would testify or not. After this recess, the trial resumed without further discussion on the record of Tuplin's decision regarding his right to testify, and Tuplin presented two witnesses to support his claim that his actions were in self-defense. Following cross-examination of the second defense witness, Tuplin stated, "That's all the witnesses I have, sir."

[¶ 5] The court then stated, "Defense rests," and invited both sides to present closing arguments. When Tuplin, during his closing argument, added facts that had not been presented in the course of the trial, the State objected twice on the basis that Tuplin was arguing facts not in evidence. In his closing argument, Tuplin told the jury: "I will admit I was arguing with my girlfriend, and I admit that I hit this individual but only after he came after me." The trial court instructed Tuplin that he could "comment on the testimony of any witnesses who have testified," but that the closing argument was not an opportunity to present evidence. Tuplin responded, "okay," on both occasions and recounted the testimony of several witnesses in a fairly accurate manner. He did not, at any point, indicate that he wanted to avail himself of the opportunity to testify.

[¶ 6] After closing arguments, the court instructed the jury and then held a sidebar conference on the instructions. At sidebar, Tuplin said, "I am just wondering if I should testify, that's all, right now." The court responded, "You made that decision, okay[?]" and Tuplin said, "I didn't know I did at that time, think about it, but that's fine." He did not further pursue a request to testify, did not ask to take the stand, and did not object to the court's conclusion that he had already made that decision. The court sent the matter to the jury.

[¶ 7] The jury returned a verdict of guilty. After a brief hearing, Tuplin was sentenced to thirty days in jail with all but two days suspended and one year of probation. Tuplin challenges many aspects of the trial. Finding no error, we address only his challenge regarding the waiver of his right to testify.

## II. DISCUSSION

A. Dual Rights: the Privilege Against Self–Incrimination and the Right to Testify

[¶ 8] The Fifth Amendment to the U.S. Constitution provides that no criminal defendant "shall be compelled in any criminal case to be a witness against himself." The purpose of the privilege against self-incrimination is to ensure that "the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." *Rogers v. Richmond*, 365 U.S. 534, 541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (recognizing that the privilege against self-incrimination enforces the fundamental principle that the American criminal system is accusatorial, not inquisitorial). Accordingly, the privilege against self-incrimination, extended to defendants in state actions by the Fourteenth Amendment, has long been regarded as "one of the 'principles of a free government.'" *Malloy v. Hogan*, 378 U.S. 1, 9, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (quoting *Boyd v. United States*, 116 U.S. 616, 632, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

[¶ 9] While the privilege against self-incrimination has historically been recognized as fundamental to the proper function of the American criminal system, a criminal defendant's right to testify has emerged more recently. *See Ferguson v. Georgia*, 365 U.S. 570, 573–78, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). In fact, at one time, defendants were generally prohibited from testifying at their own trials on the basis of witness incompetence due to self-interest. *See id.* at 574, 81 S.Ct. 756. In 1864, Maine became the first state to enact a general competency statute for criminal defendants. P.L. 1864, ch. 280, § 1; *Ferguson*, 365 U.S. at 577, 81 S.Ct. 756. Today, Maine's general competency statute provides: "In all criminal trials, the accused shall, at his own request but not otherwise, be a competent witness." 15 M.R.S. § 1315 (2005).

[¶ 10] By the end of the nineteenth century, every state but Georgia had abolished the disqualification of criminal defendants from testifying at trial. *Ferguson*, 365 U.S. at 577, 81 S.Ct. 756. As a result of this evolution in jurisprudence, the federal constitution is now recognized as guaranteeing the right to testify through the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process Clause. *See Rock v. Arkansas*, 483 U.S. 44, 51–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

[¶ 11] According to the Supreme Court, "[t]he lag in the grant of competency to the criminally accused was attributable in large measure to opposition from those who believed that such a grant threatened erosion of the privilege against self-incrimination and the presumption of innocence." *Ferguson*, 365 U.S. at 578, 81 S.Ct. 756. The modern view of the right to testify recognizes that "[t]he opportunity to testify is ... a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock*, 483 U.S. at 52, 107 S.Ct. 2704. The right to testify has been characterized as "the other side of the coin on which appears the privilege against self-incrimination." *Ingle v. State*, 92 Nev. 104, 546 P.2d 598, 599 (1976) (quotation marks omitted). Some courts have described the duality of the right to testify and the privilege against self-incrimination

by noting that an election to testify constitutes a waiver of the privilege against self-incrimination and vice versa. *See, e.g., Commonwealth v. Waters,* 399 Mass. 708, 506 N.E.2d 859, 865 (1987).

[¶ 12] Noting the fundamental importance of both rights, courts have continuously recognized that a careful balance between the two is necessary to assure criminal defendants a fair trial. *See, e.g., Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *Commonwealth v. Freeman,* 29 Mass.App.Ct. 635, 564 N.E.2d 11, 14–15 (1990); *State v. Savage,* 120 N.J. 594, 577 A.2d 455, 472–73 (1990). We examine the waiver of either right with this careful balance in mind.

## B. Standard of Review

[¶ 13] We review factual findings made by a trial court regarding waiver of a constitutional right for clear error. *See State v. Coombs,* 1998 ME 1, ¶¶ 7, 13, 704 A.2d 387, 389, 391. However, "the ultimate issue of waiver has a 'uniquely legal dimension,' which merits independent appellate review." *Id.* ¶ 13, 704 A.2d at 391 (citation omitted) (quoting *Miller v. Fenton,* 474 U.S. 104, 116, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)); *see State v. Watson,* 2006 ME 80, ¶ 31, 900 A.2d 702, 713 (applying the same bifurcated review to waiver of right to counsel); *State v. Ouellette,* 2006 ME 81, ¶ 21, 901 A.2d 800, 807 (applying the same bifurcated review to waiver of right to jury trial).

[¶ 14] As with other constitutional rights inherent in the criminal process, a waiver of the right to testify must be both voluntary and knowing. *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir.

1987); *see Epsom v. Hall,* 330 F.3d 49, 52 (1st Cir.2003); *State v. Staples,* 354 A.2d 771, 776 (Me.1976) (requiring a voluntary and knowing waiver of a criminal defendant's right to be present at trial). A valid waiver must amount to a defendant's " 'intentional relinquishment or abandonment of a known right or privilege.' " *Coombs,* 1998 ME 1, ¶ 15, 704 A.2d at 392 (quoting *State v. Knights,* 482 A.2d 436, 440 (Me. 1984)). Today, in a separate matter, we have discussed standards for determining whether a waiver of the right to counsel is voluntary or knowing. *See Watson,* 2006 ME 80, ¶¶ 14–28, 900 A.2d at 712; *see also Coombs,* 1998 ME 1, ¶¶ 13–16, 704 A.2d 387, 391–92 (discussing waiver of *Miranda* rights).

[¶ 15] Intentional relinquishment of the right to testify is a flexible concept that may be shown by a totality of the circumstances. *See Staples,* 354 A.2d at 777. Waiver may be inferred from a defendant's conduct. *See id.* We applied this flexible concept in reviewing a waiver of the right to testify in *State v. Chasse,* 2000 ME 90, ¶¶ 9–11, 750 A.2d 586, 589–90. In *Chasse,* the defendant intentionally absconded on the last day of trial, the trial went on in his absence, and when he was subsequently recaptured, he argued that he never intentionally waived his right to testify. *Id.* ¶¶ 3, 8, 750 A.2d at 588, 589. We viewed the totality of Chasse's conduct as an implied waiver and concluded that the trial court did not err in determining that he had intentionally relinquished his right to testify. *Id.* ¶ 10, 750 A.2d at 589–90.[1]

[¶ 16] Ordinarily, in reviewing the asserted waiver of other fundamental con-

---

1. Conduct evidencing relinquishment of the right to testify may also be referred to as a forfeiture. *Chang v. United States,* 250 F.3d 79, 82 (2d Cir.2001). The distinction between a forfeiture and a waiver is rarely cleanly drawn, and further discussion of this distinction is unnecessary in this case. *Cf. United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (discussing distinctions between waiver and forfeiture).

stitutional rights, we will apply the standard by which every reasonable presumption is made against a finding of waiver, *see Watson,* 2006 ME 80, ¶ 15, 900 A.2d at 708 ("[T]he right to representation by counsel requires that every reasonable presumption must be indulged against waiver."). Here, in contrast, the duality of the right to testify · and the privilege against self-incrimination precludes such a presumption. Because the waiver of one right is essentially an election of the other, neither the trial court nor the appellate court can presume against the finding of waiver of the right to testify without disrupting the equally-protected privilege against self-incrimination. Instead, we apply a strict standard to the waiver of the right to testify and carefully examine the record to determine which of the competing rights the defendant exercised and which right the defendant waived. *See Waters,* 506 N.E.2d at 865.[2] This approach comports with the need to protect constitutional rights, while recognizing the balance that must be brought to this context, where the exercise of one right will necessarily entail the relinquishment of the other.

## C.   Constitutionally Required Process

[¶ 17] How then shall we apply that strict standard? A split of authority exists among jurisdictions regarding the procedure required of a trial court to determine whether a criminal defendant has waived his or her right to testify. In some jurisdictions, in order for a defendant to waive his or her right to testify, the trial court must make an on-the-record inquiry into whether the defendant understands his or her right and wishes to waive it. *See, e.g., People v. Curtis,* 681 P.2d 504, 507–08

(Colo.1984); *LaVigne v. State,* 812 P.2d 217, 222 (Alaska 1991); *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293, 1303 (1995). Other jurisdictions have held that an on-the-record inquiry, though not required, is advisable. *See, e.g., State v. Gulbrandson,* 184 Ariz. 46, 906 P.2d 579, 598 (1995); *Barron v. State,* 264 Ga. 865, 452 S.E.2d 504, 505 n. 2 (1995); *Phillips v. State,* 105 Nev. 631, 782 P.2d 381, 382 (1989); *Commonwealth v. Siciliano,* 19 Mass.App.Ct. 918, 471 N.E.2d 1359, 1362 n. 1 (1984). Many jurisdictions, however, have declined to require a trial court to make an explicit inquiry as to the defendant's understanding and waiver of the right to testify on the basis that such a requirement might threaten the defendant's privilege against self-incrimination or involve the court in trial strategy. *See, e.g., United States v. Pennycooke,* 65 F.3d 9, 11 (3d Cir.1995); *Siciliano v. Vose,* 834 F.2d at 30; *State v. Antoine,* 564 N.W.2d 637, 639 (N.D.1997); *Taylor v. State,* 252 Kan. 98, 843 P.2d 682, 688 (1992); *Savage,* 577 A.2d at 473 (holding that when a defendant is represented by counsel, the trial court is not required to inform the defendant of the right to testify or obtain an on-the-record waiver of that right); *Waters,* 506 N.E.2d at 865.

[¶ 18] In *Siciliano v. Vose,* the United States Court of Appeals for the First Circuit addressed a criminal defendant's contention that he did not waive his right to testify because the trial court was required to specifically address him regarding his understanding and waiver of his right. 834 F.2d at 30. The court held that "a criminal defendant must claim his privilege or right to testify by attempting to take

---

**2.** "A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize ev-

ery facet of the constitutional model of a fair criminal trial." *Schneckloth v. Bustamonte,* 412 U.S. 218, 241, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

the stand or it is waived." *Id.* (quotation marks omitted). The court concluded:

> To require the trial court to follow a special procedure, explicitly telling defendant about, and securing an explicit waiver of, a privilege *to* testify (whether administered within or outside the jury's hearing), could inappropriately influence the defendant to waive his constitutional right *not* to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right.

*Id.*

**■** [¶ 19] We agree with the reasoning of the First Circuit declining to require a specific action by the trial court to securing an explicit waiver of the right to testify. The possibility that a defendant will feel pressured into giving up his right to remain silent through the court's insistence on his articulation of the waiver of the right to testify is substantial. The best practice, nonetheless, particularly where the defendant has not had the benefit of counsel, may be for the court to compose a neutral question: "Have you decided whether to exercise your right to remain silent or to exercise your alternative right to testify?" If this can be done in the circumstances of the case at hand, the record will be clearer and the opportunity for confusion may be reduced. We do not require such a practice when the defendant's decision not to testify can otherwise be discerned from the record.

**■** [¶ 20] We do, however, require that an unrepresented defendant be clearly informed of those competing rights in order to exercise them. Other jurisdictions have done the same. *See, e.g., Morales v. State,* 325 Md. 330, 600 A.2d 851, 853 (1992) ("A trial court is required to inform an unrepresented defendant of the constitutional right to remain silent or to testify."); *see also Tilghman v. State,* 117 Md.App. 542, 701 A.2d 847, 853 (1997) ("In the trial of a *pro se* criminal defendant, the court must advise the defendant of his constitutional rights to testify and to remain silent, so that he may make an informed choice to invoke one right and waive the other."); *Martin v. State,* 73 Md.App. 597, 535 A.2d 951, 954 (1988) ("For a court to find a valid waiver in the case of an unrepresented defendant, ... the record must show that the defendant was informed of the right; ordinarily, that advice will have to come from the trial judge."); *Winkelman v. State,* 498 N.E.2d 99, 101 (Ind.Ct.App.1986) (holding that the unrepresented defendants did not knowingly and intelligently waive the right to testify because the court did not inform them of their rights).

**■** [¶ 21] Accordingly, in light of the delicate balance between the privilege against self-incrimination and the right to testify, and acknowledging the risks associated with requiring the trial court to engage in any explicit or formulaic colloquy, we decline to hold that the trial court must *always* make an on-the-record inquiry regarding a defendant's understanding and waiver of the right to testify. What will be required, in order to assure that an unrepresented defendant, like Tuplin, has knowingly waived his right to testify, is for the record to demonstrate that the defendant was aware of and understood his right to testify as well as his correlative right *not* to testify. *See Martin,* 535 A.2d at 954.

**■** [¶ 22] Beyond informing the defendant that he has the right to testify or not to testify, the court is not required to counsel the defendant on his decision. *Id.* A criminal defendant who elects to proceed at trial without an attorney risks the possibility that he will not conduct his defense in the most effective manner. *See Smith v. State,* 588 A.2d 305, 306 (Me.

1991) (recognizing "the dangers of self-representation"); *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel."). The court is under no obligation to aid an unrepresented defendant in trial strategy; indeed taking such steps is fraught with peril. To provide more details on why a defendant may or may not want to testify risks influencing the defendant's decision one way or the other. For these reasons, a trial court fulfills its obligation when it informs an unrepresented defendant of the right to testify and the privilege against self-incrimination and ensures that the defendant understands those rights. *See Martin*, 535 A.2d at 954–55.

### D. Tuplin's Trial

[¶ 23] Here, the trial court gave adequate instructions to Tuplin regarding his right to testify. Tuplin responded that he understood the nature of his rights, as described by the court, and he indicated his uncertainty as to whether he wanted to testify. Thereafter, the court recessed, allowing him time to think about whether to testify or not. The trial court, thus, took appropriate steps to ensure that Tuplin understood his constitutional right to testify.

[¶ 24] Having concluded that Tuplin understood his right to testify, we next determine whether the record reflects that he intentionally relinquished this right. The record does not reflect that the court engaged in any discussion with Tuplin following the recess regarding his decision on testifying or remaining silent. Because the transcript of the proceedings does not contain any colloquy with the court in which Tuplin did, in fact, articulate his waiver of that right, we examine the record to determine whether a waiver can be implied from Tuplin's conduct.

[¶ 25] We conclude that the totality of Tuplin's conduct during the trial implies a waiver of his right to testify and an election of his privilege against self-incrimination. After the court informed him of his rights and recessed to allow him time to make his decision, Tuplin presented his defense without claiming his right to testify. When he added facts during his closing argument, the court instructed him twice that he could not present evidence. Each time, Tuplin responded, "okay," rather than indicating that he wished to testify. Through the entire presentation of his defense, Tuplin never attempted to take the stand, nor did he indicate his intention to do so. The fact that he may have regretted his decision not to testify, particularly at the point of sentencing, does not change the outcome of this case. We conclude that Tuplin waived his right to testify by not electing to testify during the presentation of the defense, after the court had informed him of his rights and allowed him time to decide whether to testify or avoid self-incrimination.

[¶ 26] In sum, Tuplin understood the nature of his right to testify; he did not exercise that right during the presentation of his defense; he did thereby exercise his right to remain silent; and he knowingly waived the right to testify on his own behalf.

The entry is:

Judgment affirmed.

CALKINS, J., with whom DANA and SILVER, JJ., join, dissenting.

[¶ 27] I respectfully dissent. I would not conclude that the trial court gave adequate instructions to Tuplin regarding his right to testify. Many pro se defendants

simply do not understand trial procedure well enough to know that if they choose to testify, they must testify during the presentation of evidence as a witness and not in their opening or closing statements. For this reason, I would require the trial courts to do what the Court has described as a "best practice." That is, I would require the court to directly ask the pro se defendant, out of the presence of the jury, whether the defendant has chosen to exercise the right to remain silent or the right to testify. For the defendant who states he wants to testify, the court should briefly explain how and when the right to testify may be exercised.

[¶ 28] After the State rested, and out of the presence of the jury, the court explained to Tuplin that the State had rested and that he could present evidence. The court said to Tuplin: "You can have other witnesses testify, or you can testify yourself. You are never compelled to testify or present evidence, but if you wish to do so you have the opportunity, you understand that?" Except for the use of the disjunctive "or" which may have given Tuplin the mistaken impression that he had to choose between testifying himself or having witnesses testify for him, I have no quarrel with the court's explanation.

[¶ 29] However, I would require the court, out of the presence of the jury, to obtain an answer from the defendant as to which right he intends to exercise: the right to remain silent or the right to testify. If the defendant states that he wishes to testify, the court should then explain how and when the testimony will be taken. For example, the court might say,

> Now that you have chosen to testify, I want to inform you that you will testify like any other witness. It is up to you whether you testify before or after your other witnesses. After you have called all of your witnesses, including yourself,

your opportunity to present evidence will be concluded and you will have no other opportunity to testify or to call witnesses.

[¶ 30] Because I do not believe that the record demonstrates that Tuplin was adequately informed about his right to testify, I would vacate.