MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 47
Docket:      And-18-84
Argued:      February 4, 2019
Decided:     March 28, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

BARTOLO P. FORD

v.

STATE OF MAINE

JABAR, J.

[¶1]  Bartolo P. Ford appeals from a judgment of the Superior Court (Androscoggin County, *Marden, J.*) denying in part and granting in part his petition for post-conviction review.  Ford argues that the court erred by denying his requested relief concerning his felony convictions despite its determination that he had established that his trial counsel was ineffective.  We vacate the court's judgment and remand.

## I.  BACKGROUND

[¶2]  In 2011, Ford filed a petition for post-conviction review alleging ineffective assistance of counsel on multiple grounds.  In its judgment granting in part and denying in part Ford's petition, the court made the following

findings of fact, all of which are supported by competent evidence in the record. *See Middleton v. State*, 2015 ME 164, ¶ 2, 129 A.3d 962.

[¶3]  In 2008, Ford was indicted on one count of aggravated attempted murder (Class A), 17-A M.R.S. § 152-A(1)(F) (2018), two counts of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(C) (2018), two counts of reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1252(4) (2018), one count of eluding an officer (Class C), 29-A M.R.S. § 2414(3) (2018), and one count of theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A) (2018).[1]  Following a three-day jury trial in 2010, Ford was convicted on all counts and the trial court (*Marden, J.*) sentenced him to twenty years' imprisonment, with all but nine years suspended, followed by six years' probation.

[¶4]  We have previously summarized the facts leading to Ford's conviction and the pertinent testimony from his trial:

> On the evening of September 15, 2008, Ford led the Auburn police department on a high-speed chase.  The chase began when Ford sped off after a police officer, suspecting that the concrete well tiles in the bed of Ford's truck had been stolen, approached the vehicle and questioned him.  It ended when Ford crashed his F-550 dump truck into a stream.

---

[1] Ford was also indicted on four counts of theft by receiving stolen property (Class C), 17-A M.R.S. § 359(1)(B)(4) (2018), and one count of theft by receiving stolen property (Class B), 17-A M.R.S. § 359(1)(B)(1) (2018), but those charges were severed and later dismissed.

During the chase, Ford repeatedly used his truck to ram the pursuing police cruisers. Two cruisers sustained serious damage, and one officer narrowly escaped being struck by Ford's dump truck by scrambling up an embankment moments before Ford drove his truck into the officer's cruiser. When he refused to stop, Ford was fired upon by an Auburn police officer; the bullet hit and shattered Ford's hip. Ford ultimately surrendered to a Maine State Police trooper after crashing his dump truck into a small stream. He was wet, disheveled, and had blood running down his leg.

Ford argued that he suffered from a mental abnormality as defined by 17-A M.R.S. § 38 (2012). As evidence of his condition, he point[ed] to post-traumatic stress disorder, which he attribute[d] to trauma suffered in the military during Operation Desert Storm, and injuries sustained in a car accident. Ford also argued that the prescription medications he consumes to treat his PTSD contributed to his mental abnormality. Much of this evidence was presented through expert testimony. Dr. John Dorn, a psychiatrist, concluded that Ford was "attacking the enemy as he saw it" because his PTSD caused him to react to the stimuli of flashing lights and sirens. Dr. Dorn determined that the combination of the drugs Ford took that day, his concussion from the car accident, and his PTSD triggered a flashback state that could have lasted for several hours.

Dr. Carlyle Voss, also a psychiatrist, testified for the State that some of Ford's reports made his defense of abnormal condition of the mind plausible, but that he also believed Ford was exaggerating. Ultimately, Dr. Voss concluded that Ford was not out of touch with reality that night. Ford did not testify.

*State v. Ford*, 2013 ME 96, ¶¶ 2-5, 82 A.3d 75.

[¶5] In 2011, Ford filed a petition for post-conviction review, alleging ineffective assistance of trial counsel for (1) refusing to permit Ford to testify,

(2) coercing Ford to reject a plea agreement, (3) failing to file a notice of appeal, (4) failing to adequately investigate the case, and (5) failing to request a self-defense jury instruction. The Superior Court (*Marden, J.*) granted Ford's petition solely as to the failure to file a notice of appeal, reinstating Ford's right to appeal his conviction, but deferred action on the remaining grounds asserted pending the outcome of the appeal. *See* 15 M.R.S. § 2130 (2018).

[¶6] In his appeal, Ford argued that the trial court had erred by failing to instruct the jury on self-defense and voluntary intoxication, and by not ensuring that Ford had knowingly, voluntarily, and intelligently waived his right to testify. *State v. Ford*, 2013 ME 96, ¶¶ 11, 18, 82 A.3d 75. We affirmed Ford's conviction. *Id.* ¶¶ 17, 23. In particular, we rejected Ford's assertion relating to his apparent decision not to testify at trial because the record then before us did not demonstrate a problem. *Id.* ¶¶ 18-23. Rather, we noted that a proper challenge to the role that counsel played in Ford's failure to testify would need to be developed in a post-conviction proceeding. *Id.* ¶ 21 n.6.

[¶7] After we affirmed the convictions, the Superior Court held a three-day hearing on Ford's petition for post-conviction review. Following the hearing, the court found that Ford had been denied his right to effective assistance of counsel by his trial counsel's refusal to discuss, "in any manner,

his right to testify." The court concluded, however, that the trial counsel's actions prejudiced Ford only with regard to his conviction for misdemeanor theft by unauthorized taking; it thus vacated that conviction and entered a judgment of not guilty. The court denied Ford's petition as to his remaining felony convictions based upon the deprivation of his right to testify— aggravated attempted murder, aggravated criminal mischief, reckless conduct, eluding a police officer—and all other stated grounds for relief.

[¶8] Ford sought a certificate of probable cause to appeal the court's denial of his petition for post-conviction review. *See* 15 M.R.S. § 2131(1) (2018); M.R. App. P. 19(a)(2)(F). We granted the certificate of probable cause limited to the question of "whether the court erred in denying that part of Ford's petition for post-conviction relief based on the alleged deprivation by trial counsel of his right to testify," and therefore do not discuss the other grounds for relief that Ford raised in his petition. *See* M.R. App. P. 19(f). The State does not appeal or otherwise challenge the court's conclusion that Ford was denied effective assistance of counsel, or that, in regard to the conviction for theft by unauthorized taking, Ford was prejudiced.

## II. DISCUSSION

[¶9]   Ford argues that the post-conviction court erred by failing to determine that his felony convictions also occurred as a result of a "fundamentally unfair trial" caused by the deprivation of his right to testify by his trial counsel.  We review the "post-conviction court's legal conclusions de novo and its factual findings for clear error." *Fortune v. State*, 2017 ME 61, ¶ 12, 158 A.3d 512.

[¶10]   "The Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution ensure that a criminal defendant is entitled to receive the effective assistance of an attorney."  *McGowan v. State*, 2006 ME 16, ¶ 9, 894 A.2d 493; *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel.").  "The primary purpose of the effective assistance of counsel requirement is to ensure a fair trial." *McGowan*, 2006 ME 16, ¶ 9, 894 A.2d 493.

[¶11]  In approaching a claim of ineffective assistance of counsel, we have recognized that *Strickland v. Washington*, 466 U.S. 668 (1984), provides the appropriate standard.  *See Fortune*, 2017 ME 61, ¶ 9, 158 A.3d 512.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) "that counsel's representation fell below an objective standard of

reasonableness" and (2) that the "errors of counsel . . . actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 688, 693. "The burden is on [the petitioner] to prove both prongs." *McGowan*, 2006 ME 16, ¶ 12, 894 A.2d 493.

A.     Deficient Performance

[¶12]  As the Superior Court correctly found, trial counsel deprived Ford of his constitutional right to testify. *See State v. Tuplin*, 2006 ME 83, ¶¶ 10-11, 901 A.2d 792 ("[T]he federal constitution is [] recognized as guaranteeing the right to testify . . . ."). The post-conviction court found that Ford's trial counsel failed to prepare Ford to testify, failed to inform Ford of his right to testify, and in fact prevented Ford from testifying by stating, in no uncertain terms, "[t]here is no f***ing way you're going to testify." *See State v. Ford*, 2013 ME 96, ¶ 21, 82 A.3d 75 ("It is a lawyer's duty to advise his or her client of all rights, including the right to testify.").

[¶13]  Given this deprivation, the post-conviction court appropriately determined that Ford met his burden as to the first prong of the *Strickland* analysis. *See Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007) ("[F]ailure to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence, and [] such performance is constitutionally deficient."), *overruled on other grounds by Weaver v.*

*Massachusetts*, --- U.S. ---, 137 S. Ct. 1899, 1907-13 (2017); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) ("[I]f defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify.").

B.      Actual Prejudice

[¶14]   To establish that he was prejudiced by trial counsel's deficient performance, Ford "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[¶15]   The post-conviction court concluded that, had Ford been allowed to testify, there is a reasonable probability that the jury could have determined that he was not guilty of theft.  The court based this on a receipt for the well tiles and the accompanying testimony that Ford alleges he would have presented.  As to the remaining convictions, the court concluded that Ford failed to show any actual prejudice.  We disagree.  Ford's theft conviction is inextricably intertwined with the other charges, and the prejudice that Ford suffered also affected his other convictions.

[¶16] At Ford's trial, the jury was presented with two competing explanations of the events that occurred on the night of September 15, 2008. Under both theories, the pivotal issue was Ford's state of mind. The State's theory was that Ford was a thief who was attempting to avoid being caught. Ford's version of events began with his claim that he was not a thief, and that, in response to an unwarranted confrontation with the police, he was reliving traumatic experiences from his military service. According to Ford, when he was confronted by the police with sirens and flashing lights, his PTSD caused a "flashback" that made him believe that he was back in a combat zone.

[¶17] Ford asserts that had he been able to exercise his right to testify, he would have told the jury that he was not stealing the well tiles; he believed he had permission to take them. Further, he would have detailed the experiences that he faced in the military and how they have severely affected him.

[¶18] When "the defendant takes the stand . . . his demeanor can have a great bearing on his credibility and persuasiveness, and on the degree to which he evokes sympathy." *Riggins v. Nevada*, 504 U.S. 127, 142 (1992) (*Kennedy, J.*, concurring). "[T]he defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression

on the trier of fact, an impression that can have a powerful influence on the outcome of the trial." *Id.*

[¶19] The court acknowledged that Ford's testimony could have altered the outcome of the theft conviction, and the State does not challenge that determination. If Ford did not believe that he was stealing the well tiles, then there would have been no reason for Ford to try to avoid being caught. Without the theft, the State's explanation for Ford's actions is less plausible. Although "motive" is not an element of the charges at issue in the case, the State premised its prosecution on the theory that Ford was fleeing from an arrest. Because Ford was prevented from testifying, the jury did not hear crucial testimony that would have borne directly on the pivotal issue in this case—whether Ford was suffering from an abnormal state of mind. *See Ford*, 2013 ME 96, ¶ 4, 82 A.3d 75 ("At trial, Ford argued that he suffered from a mental abnormality . . . ."); *Owens*, 483 F.3d at 59 ("A defendant's testimony could be crucial in any trial, and it could be difficult for us to determine whether or not a jury would have found his testimony credible.").

[¶20] The standard of review on an appeal from a judgment denying a petition for insufficient evidence is a high one—the petitioner must establish that the evidence *compelled* the court to find that he had proved entitlement to

post-conviction relief. *See Middleton*, 2015 ME 164, ¶ 11, 129 A.3d 962. This is one of those cases where the petitioner has done just that. The record establishes that Ford was prejudiced in regards to his convictions on all counts by the deficient performance of his trial counsel, and but for the deprivation of Ford's right to testify, there is a reasonable probability that "the result of the proceeding would have been different."[2] *Strickland*, 466 U.S. at 694.

## III. CONCLUSION

[¶21] The court erred when it denied Ford's petition for post-conviction relief as to his felony convictions given its determination that Ford had proved ineffective assistance of counsel for the misdemeanor charge. Ford's trial counsel deprived him of his constitutional right to testify, constituting deficient performance outside an objective standard of reasonableness. As a result of

---

[2] Ford also argues that a deprivation of the right to testify constitutes a structural error that entitles him to an automatic reversal of his convictions without any showing of actual prejudice. *See McCoy v. Louisiana*, --- U.S. ---, 138 S. Ct. 1500, 1511 (2018) (stating that the deprivation of a defendant's right to self-representation is a structural error); *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (same). The State contends that, even if a deprivation of the right to testify is a structural error, because Ford raises this issue in the context of a claim of ineffective assistance of counsel, he is still required to show prejudice. *See Weaver v. Massachusetts*, --- U.S. ---, 137 S. Ct. 1899, 1908-12 (2017) (holding that a deprivation of the right to a public trial, even though a structural error, does not entitle a defendant to automatic reversal when brought as a claim of ineffective assistance of counsel). Because we conclude that Ford was prejudiced by the deprivation of his right to testify, we do not reach the question of whether such a deprivation constitutes structural error or if he would be entitled to a judgment vacating the underlying criminal judgment without a showing of actual prejudice. *See Rangeley Crossroads Coalition v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223 ("We avoid expressing opinions on constitutional law whenever a non-constitutional resolution of the issue[] renders a constitutional ruling unnecessary.").

counsel's deficient performance, Ford was prejudiced in his attempt to defend against all charges brought against him, entitling him to post-conviction relief from judgments of conviction on all counts.

The entry is:

> Judgment vacated. Remanded to the Superior Court for entry of a judgment granting the petition for post-conviction review and vacating all remaining convictions in the underlying criminal judgment.

---

David Bobrow, Esq. (orally), Bedard & Bobrow, PC, Eliot, for appellant Bartolo P. Ford

Andrew S. Robinson, District Attorney, Patricia Reynolds Regan, Asst. Dist. Atty., and Patricia A. Mador, Asst. Dist. Atty. (orally), Office of the District Attorney, Lewiston, for appellee State of Maine

Androscoggin County Superior Court docket number CR-2017-1057
FOR CLERK REFERENCE ONLY