MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 7
Docket:        Ken-22-315
Argued:        July 6, 2023
Decided:       January 25, 2024

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.
Majority:      STANFILL, C.J. and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.
Dissent:       JABAR, J.

# MARIO GORDON

v.

# STATE OF MAINE

HORTON, J.

[¶1]  Mario Gordon appeals from a trial court judgment (Kennebec County, *Benson, J.*) denying his petition for post-conviction review alleging ineffective assistance of counsel.  In the underlying criminal case, Gordon pleaded guilty to multiple charges pursuant to a plea agreement with a sentencing cap, in reliance on his attorney's inaccurate prediction that Gordon would likely receive a sentence substantially more lenient than the sentence the court ultimately imposed.  After an evidentiary hearing, the post-conviction court concluded that Gordon had failed to meet his burden of persuasion.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts and procedure are drawn from the procedural record, the post-conviction court's supported findings, and our 2021 opinion affirming Mario Gordon's sentence, *see State v. Gordon*, 2021 ME 9, 246 A.3d 170.  In July 2018, Gordon was charged by indictment with seven counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D) (2017), *id.* § 1105-A(1)(B)(1), (H) (2023); four counts of violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2023); and one count of criminal forfeiture, 15 M.R.S. § 5826 (2017).[1]  *Gordon*, 2021 ME 9, ¶ 3, 246 A.3d 170.

[¶3]  While the case was pending, the State proposed a plea agreement in which Gordon would plead guilty to several of the charges and receive a sentence of eight years "straight," i.e., with none of the period of incarceration suspended.  Gordon consistently rejected the proposal because he favored a split sentence, i.e., a sentence that included a suspended period of incarceration

---

[1]  When Gordon was arrested on these charges, he was on bail in another case in which he had been charged, in 2016, and indicted, in 2017, with three counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2023), and two counts of criminal forfeiture, 15 M.R.S. § 5826 (2016).  *State v. Gordon*, 2021 ME 9, ¶¶ 2-3, 246 A.3d 170.

Title 17-A M.R.S. § 1105-A(1)(D) and 15 M.R.S. § 5826 have been amended since the occurrence of the conduct giving rise to the charges; the amendments are not relevant to the issues presented in this appeal.  *See* P.L. 2021, ch. 396, § 4 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 1105-A(1)(D)); P.L. 2019, ch. 97, §§ 4-6 (effective Sept. 19, 2019) (codified at 15 M.R.S. § 5826(1)-(2), (6) (2023)); P.L. 2021, ch. 454, § 13 (effective Oct. 18, 2021) (codified at 15 M.R.S. § 5826(9) (2023)).

and probation. At an unrecorded dispositional conference convened by the trial court in August 2019, the State reiterated its proposal. Gordon's attorney countered with a proposal for a sentence of ten years' incarceration with all but six years suspended and four years of probation.[2] The State did not agree to Gordon's counter-proposal. The court told the prosecutor and Gordon's attorney that both proposals were "in the realm of reasonableness" and asked the State to propose an agreement with a cap or limit on the maximum sentence, which would allow Gordon to argue for less prison time and a split sentence. The State indicated that, if Gordon did not accept its eight-years-straight proposal, it would agree to recommend a sentence of no more than twelve years straight, with Gordon free to argue for less prison time and for probation. It is undisputed that the court did not express any opinion on the reasonableness of the State's sentencing-cap proposal.

[¶4] Based on the court's statement that both parties' initial proposals were reasonable, Gordon's attorney advised him that, if Gordon elected to agree to a twelve-year cap, the sentence would likely be eight years straight or ten years with some portion suspended, or something between those, but he did not give Gordon any guarantee that the sentence would be less than the cap of

---

[2] Gordon's trial counsel testified at the post-conviction review (PCR) hearing that the prosecutor had made clear that the State would not agree to any split sentence.

4

twelve years straight.[3]  He also advised Gordon that the twelve-year-cap option offered Gordon's only hope of receiving a split sentence because the State would not agree to a split sentence.

[¶5]  Gordon's attorney testified that after he and Gordon had conferred, Gordon and the State agreed that if Gordon pleaded guilty that day, sentencing would be by the same judge but would be deferred to provide Gordon some time to decide between the State's two proposals.  Later that day, Gordon pleaded guilty to three of the counts of aggravated trafficking and two of the counts of violating conditions of release and admitted the count of criminal forfeiture.[4]  During the plea colloquy, *see* M.R.U. Crim. P. 11(b)-(e), Gordon acknowledged that he understood that he could be sentenced to up to twelve years in prison under the terms of the plea agreement if he chose the twelve-year-cap option instead of the eight-years-straight option.  He also confirmed that, apart from the eight-years-straight and twelve-year-cap

---

[3]   Gordon's attorney testified that, given the court's statement that both proposals were reasonable, he believed that Gordon "would be no worse off by going in front of the judge with the cap than if he was to work something out by agreement with the State" and advised Gordon accordingly.

[4] The State dismissed the remaining charges.  During the same hearing, with respect to the charges alleged in the other indictment, Gordon pleaded guilty to one count of aggravated trafficking and admitted the two counts of criminal forfeiture, and the State dismissed the remaining charges.

options that were placed on record, no one had made any promises about what would happen if he pleaded guilty.

[¶6]  The court held a sentencing hearing in December 2019, about four months after the dispositional conference and plea.  At some point before sentencing, Gordon chose to accept the State's twelve-year-cap proposal.[5] *See Gordon*, 2021 ME 9, ¶ 7, 246 A.3d 170.  Gordon and the State submitted sentencing memoranda in which the State argued for a sentence of twelve years straight and Gordon argued for a sentence of ten years with all but four years suspended and four years of probation.  The memoranda did not allude to the discussion during the dispositional conference months before, nor did the State, Gordon, or the court allude to those discussions during the sentencing hearing.  After the parties presented their arguments, the court imposed its sentence.  In its *Hewey* analysis, *see State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993); 17-A M.R.S. § 1252-C (2018),[6] the court (1) set the basic term of imprisonment at twelve years, (2) weighed the aggravating and mitigating circumstances and left the maximum term of imprisonment at twelve years,

---

[5]  The post-conviction court did not make a finding as to when or how Gordon expressed his decision to proceed with the twelve-year-cap option.  The post-conviction record contains an affidavit signed by the prosecutor stating that Gordon's attorney informed the prosecutor of the decision by text message on September 11, 2019.

[6]  Title 17-A M.R.S. § 1252-C has since been repealed and replaced.  *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1602 (2023)).

and (3) determined that no portion of that term would be suspended. The court imposed concurrent sentences of twelve years straight (and mandatory minimum, noncumulative fines) on the aggravated trafficking charges. Neither Gordon nor his attorney voiced any surprise or objection in response to the sentence during the hearing. Gordon's attorney did not move to allow Gordon to withdraw his plea, because as he testified at the post-conviction hearing, he did not believe that there was a legal basis for the motion.

[¶7] Gordon sought leave to appeal from his sentence, and the Sentence Review Panel granted his request.[7] *Gordon*, 2021 ME 9, ¶ 11, 246 A.3d 170. In a February 2021 opinion, we affirmed the sentence, concluding that (1) the court's sentencing process did not result in a due process violation because the sentence fell within the range contemplated by the plea agreement and (2) the court had not misapplied the sentencing statutes or disregarded relevant factors in imposing the sentence.[8] *Gordon*, 2021 ME 9, ¶¶ 12-21, 246 A.3d 170.

---

[7] Gordon also filed a motion to correct or reduce the sentence, arguing that the court had overlooked its statements that the more lenient plea proposals that had been discussed—but not accepted—were within the realm of reasonableness. *Gordon*, 2021 ME 9, ¶ 9, 246 A.3d 170; *see* M.R.U. Crim. P. 35. The trial court denied Gordon's Rule 35 motion, finding that the sentence was not influenced by a mistake of fact. *See* M.R.U. Crim. P. 35(c)(2). Gordon did not appeal from the denial of his Rule 35 motion or from the judgment of conviction. *See Gordon*, 2021 ME 9, ¶¶ 13, 15 n.8, 246 A.3d 170.

[8] We also indicated that, because Gordon had not filed an appeal from the judgment of conviction or from the denial of his Rule 35 motion, he could challenge only the "propriety" of the sentence.

Our focus was on whether the sentencing court "abused its sentencing power or acted unjustly in the sentencing process, in violation of due process." *Gordon*, 2021 ME 9, ¶ 13, 246 A.3d 170. Although Gordon attempted to raise issues regarding his reliance on the court's comments during the dispositional conference, we said that "any statements made at the dispositional conference" were not "properly before us" because the statements made during the unrecorded dispositional conference were not part of the trial court record. *Gordon*, 2021 ME 9, ¶¶ 12-13, 15 n.8, 246 A.3d 170. We indicated that Gordon's argument based on the dispositional conference was "collateral" and could only be pursued in a post-conviction review proceeding. *Id.* ¶ 15 n.9; *see State v. Adams*, 2018 ME 60, ¶ 11, 184 A.3d 875.

[¶8] Gordon timely filed a petition for post-conviction review (and, later, an amended petition), arguing that he had been denied the right to the effective assistance of counsel. In keeping with longstanding practice, the post-conviction claim was assigned to the judge who presided at Gordon's plea

---

*Gordon*, 2021 ME 9, ¶¶ 13 & n.7, 15 n.8, 246 A.3d 170. We have since clarified that nothing prohibits us from addressing arguments concerning the legality of a sentence in the context of a discretionary sentence appeal, even if the appellant could have raised (but did not raise) those arguments in an appeal from the conviction. *State v. Murray-Burns*, 2023 ME 21, ¶¶ 12-17, 290 A.3d 542.

8

and sentencing.[9]  The post-conviction court held an evidentiary hearing during which it heard testimony from Gordon's trial attorney and from Gordon.  The court admitted several exhibits, including affidavits by Gordon, Gordon's trial attorney, and the prosecutor who represented the State describing the dispositional conference, pleas, and sentencing.  Gordon acknowledged during his testimony that his trial attorney "didn't guarantee" that Gordon would receive a sentence of less than twelve years and agreed that his attorney said only that "that's what he—he thought would happen."  He testified that, although he knew that a twelve-year sentence was a possibility, he chose the twelve-year-cap option because he and his attorney believed that the sentence would probably be lower than twelve years even if it was a straight sentence, and he wanted to be able to argue for a split sentence.

[¶9]  In a written order dated August 31, 2022, the court denied Gordon's petition for post-conviction relief.  The court stated that although trial counsel's "erroneous predictions and mistaken beliefs [were] regrettable, the evidence [did] not support a finding of ineffective assistance of counsel."  Specifically, the court found, inter alia, that trial counsel's advice to Gordon to proceed with the

---

[9]  The practice of assigning post-conviction proceedings to the same jurist who presided over the trial or plea proceeding at issue on post-conviction review rests on the principle that the presiding judge or justice is in a better position to evaluate the merits of the post-conviction claim.  *See* M.R.U. Crim. P. 69A(b)(1).

twelve-year-cap option "represented a strategic decision to achieve some probation like [Gordon] wanted," given that the State would not agree to recommend a split sentence; that there was no evidence that Gordon did not understand that he could receive up to a twelve-year sentence; and that there was no basis for Gordon's counsel to object to the sentence when it was imposed because Gordon understood the plea agreement and entered into it voluntarily and the sentence was consistent with the agreement. The court determined that Gordon had not demonstrated that his counsel's representation fell below an objective standard of reasonableness.

[¶10] Gordon sought a certificate of probable cause to appeal. *See* 15 M.R.S. § 2131(1) (2023); M.R. App. P. 2B(b)(1), 19(a)(2)(F). We granted Gordon's application in part, issuing a certificate of probable cause to appeal on the issues of whether Gordon was deprived of his right to the effective assistance of counsel because of (1) counsel's advice to proceed with the plea agreement under which Gordon could be sentenced to up to twelve years and (2) counsel's failure to object at sentencing to the twelve-year sentence that the court imposed. We declined to permit Gordon to appeal on two other alleged instances of ineffective assistance that he asserted in his application: that

counsel failed to advocate for a lower cap during the dispositional conference and that counsel failed to appeal from the denial of his Rule 35 motion.

## II. DISCUSSION

### A. Elements and Standard of Review for a Post-Conviction Petition Based on Ineffective Assistance of Counsel

[¶11]　The United States and Maine Constitutions guarantee that "a criminal defendant is entitled to receive the effective assistance of an attorney." *McGowan v. State*, 2006 ME 16, ¶ 9, 894 A.2d 493; *see* U.S. Const. amend. VI; Me. Const. art. I, § 6. "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) 'that counsel's representation fell below an objective standard of reasonableness' and (2) that the 'errors of counsel actually had an adverse effect on the defense.'" *Ford v. State*, 2019 ME 47, ¶ 11, 205 A.3d 896 (alteration omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).

[¶12]　With respect to the performance prong, "counsel's representation of a defendant falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney." *Philbrook v. State*, 2017 ME 162, ¶ 7, 167 A.3d 1266 (quotation marks omitted). We have stated that "strategic and tactical decisions by defense counsel must be manifestly unreasonable to result in a new trial based on ineffective assistance

of counsel," *Pineo v. State*, 2006 ME 119, ¶ 13, 908 A.2d 632. However, "a determination that defense counsel's choices amount to 'trial strategy' does not automatically insulate them from review," *Watson v. State*, 2020 ME 51, ¶ 20, 230 A.3d 6 (quotation marks omitted). In the context of a conviction based on a guilty plea, the purpose of the constitutional requirement of effective assistance of counsel is to ensure that when giving advice, counsel acts "within the realm of an ordinary competent attorney because the voluntariness of the plea hinges upon whether the advice is that of an ordinary competent attorney." *Aldus v. State*, 2000 ME 47, ¶ 15, 748 A.2d 463; *see McMann v. Richardson*, 397 U.S. 759, 770-71 (1970) (holding that the issue is not "whether a court would retrospectively consider counsel's advice to be right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases").

[¶13] To establish actual prejudice, i.e., that counsel's errors had an adverse effect on the defense, a petitioner must demonstrate that, but for his trial attorney's deficient performance, "there is a reasonable probability that 'the result of the proceeding would have been different.'"[10] *Ford*, 2019 ME 47,

---

[10] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington*, 466 U.S. 688, 691 (1984).

¶ 20, 205 A.3d 896 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must "show that the alleged error by counsel impugns the validity of the conviction." *Laferriere v. State*, 1997 ME 169, ¶ 8, 697 A.2d 1301. "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quotation marks omitted). "At the core of the prejudice analysis" is whether the plea proceeding "produced a just result," which is "the knowing and voluntary entry of a guilty plea by a guilty party." *Id.* ¶ 12 (quotation marks omitted). "Unlike at a trial, the defendant who enters a plea of guilty in a Rule 11 proceeding is cooperating in the creation of a record intended to instill confidence that the outcome is a reliable reflection of guilt. These characteristics of that proceeding make it particularly difficult to demonstrate prejudice from the errors of counsel . . . ." *Id.*

[¶14] We "review a post-conviction court's legal conclusions de novo and its factual findings for clear error." *Fortune v. State*, 2017 ME 61, ¶ 12, 158 A.3d 512. "Both prongs of the *Strickland* analysis often present mixed questions of law and fact," and we "apply the most appropriate standard of

review for the issue raised depending on the extent to which that issue is dominated by fact or by law." *Hodgdon v. State*, 2021 ME 22, ¶ 13, 249 A.3d 132 (quotation marks omitted).

> Because a petitioner bears the burden of proof at the post-conviction hearing, we will not disturb the court's determination that the petitioner failed to satisfy his burden unless the evidence compelled the court to find to the contrary.

*Id.* (quotation marks omitted).

## B. Gordon's Attorney's Advice and Recommendation Regarding the Twelve-Year Cap Agreement

[¶15] Gordon contends that his trial attorney provided ineffective assistance by advising him to accept the twelve-year-cap offer instead of the eight-years-straight offer. His brief asserts that his attorney all but guaranteed him that his maximum sentence would have been ten years or less, that counsel failed to convey adequately the significant risk associated with the twelve-year-cap option, and that otherwise he would not have chosen to proceed with the cap option. The State contends in response that Gordon's attorney acted reasonably in recommending that he accept the twelve-year-cap offer while informing him that a twelve-year sentence was possible but unlikely. The State points to the court's statements during the dispositional conference, Gordon's consistent rejection of the eight-years-straight option in

14

favor of a sentence that included probation, and Gordon's high exposure to a much harsher sentence were he to proceed to a trial. The State also argues that, based on Gordon's responses to the court's questions during the Rule 11 plea inquiry, the court did not err in finding that Gordon understood the risk that he could receive a sentence at the cap, thus making it difficult for Gordon to demonstrate a lack of confidence in the justness of the outcome.

[¶16] Gordon's case presented challenging circumstances for his trial attorney. The State's case was strong. Gordon's exposure to a sentence of more than twelve years, were he to go to trial, was high—he was charged with multiple Class A crimes, the most serious charges arising while he was on bail for other drug trafficking charges, and he had a significant trafficking-related criminal history. The court had indicated during the dispositional conference that the parties' initial proposals—for an eight-year unsuspended sentence and a ten-year sentence with a suspended portion—were reasonable. Gordon had consistently rejected the State's straight-sentence offer because he wanted to obtain a sentence that included probation. Other than an open plea, which would have exposed Gordon to a sentence of up to thirty years, the only way for Gordon to achieve his goal of probation was to choose the cap agreement that

limited his risk to a twelve-year straight sentence while preserving his opportunity to argue for a split sentence.

[¶17] Gordon's attorney clearly evaluated the risks and benefits of each of Gordon's options and drew on his professional experience and judgment in advising Gordon that (1) he should not go to trial, (2) the benefit of the twelve-year-cap option was worth pursuing despite its risk because there was a reasonable chance that the court would suspend a portion of the sentence, and (3) a twelve-year straight sentence was possible, but unlikely. The advice that Gordon should proceed with the twelve-year-cap option was a strategic decision that was not "manifestly unreasonable," *Pineo*, 2006 ME 119, ¶ 13, 908 A.2d 632, and it did not "fall[] below what might be expected from an ordinary fallible attorney," *Philbrook*, 2017 ME 162, ¶ 7, 167 A.3d 1266 (quotation marks omitted).

[¶18] That the court ultimately imposed a twelve-year unsuspended sentence (after reading the parties' "exhaustive" sentencing memoranda, listening to their arguments, and conducting a detailed *Hewey* analysis that involved the weighing of significant aggravating and mitigating factors) does

not render Gordon's attorney's advice deficient.[11] *See Manley v. State*, 2015 ME 117, ¶ 16, 123 A.3d 219 (explaining that "trial counsel's strategic decisions, even if they prove to be wrong in hindsight, . . . do not necessarily indicate ineffectiveness" (alteration omitted)).

[¶19] Specifically, that Gordon's attorney's prediction of the likely sentence proved incorrect does not establish ineffective assistance of counsel or enable Gordon to withdraw his guilty plea. "An erroneous sentence estimate by defense counsel does not render a plea involuntary." *United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 108 (2d Cir. 1970) (alteration and quotation marks omitted).[12] "The fact that the defendant may have had expectations that

---

[11] The attorney's advice relied heavily on the court's view that the State's eight-years-straight proposal and Gordon's counter proposal were both reasonable. This was not an irrational interpretation of the court's comments, although it overlooked the fact that the court had not been asked whether the State's cap proposal was also reasonable. An indication by a judge at a dispositional conference that the parties' settlement proposals are "reasonable" means only that the proposals fall within a range of sentences that might be accepted by the court as a negotiated settlement. It does not telegraph what sentence a judge would actually impose in the event of an open plea or capped-sentence agreement, nor did Gordon's attorney testify that he believed the court had made a commitment to impose a particular sentence. Moreover, absent the court's commitment to accept a plea agreement for a specific sentence, both the State and the defendant are at risk that the sentence may vary from their expectations. The court at a dispositional conference may lack access to information and arguments that would be presented at an actual sentencing: the defendant's allocution, the victim impact statement, the sentencing memoranda, and other information about aggravating and mitigating factors. Unless the court commits itself to a particular sentence, the court is free to impose any lawful sentence within the scope of the parties' plea agreement.

[12] The circumstances in *Mancusi* are similar to those presented here. *United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 105-07 (2d Cir. 1970). Trial counsel testified that he had told the petitioner that he "felt sure" that the petitioner would be ordered to serve his sentence in another jurisdiction if he pleaded guilty, based on information from parole officers in the other jurisdiction and the court's

his plea would result in leniency is not sufficient, in the absence of evidence that the expectation was induced by the government, to justify withdrawal of the plea." *Id.* (alteration and quotation marks omitted); *see also United States ex rel. Bullock v. Warden, Westfield State Farm for Women*, 408 F.2d 1326, 1330-31 (2d Cir. 1969); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("Although a claim frequently asserted is that the guilty plea was entered by the prisoner in the erroneous belief, induced by discussions with his lawyer, that he would receive a lesser sentence than that ultimately imposed or that he would be permitted to withdraw his guilty plea, this has repeatedly been held insufficient to warrant [post-conviction relief]."). Moreover, counsel's advice in this case did not include the objectively incorrect information that was present in the cases on which Gordon relies. *See United States ex rel. Hill v. Ternullo*, 510 F.2d 844, 847 (2d Cir. 1975) (discussing the critical difference, in examining whether trial counsel's plea advice is deficient, between "a prediction which has proven inaccurate" and "a misstatement of easily accessible fact," such as a statutory minimum or maximum sentence). Gordon's attorney did not give the

---

indication that it would consider that outcome. *Id.* at 106, 108. The sentencing court ultimately ordered otherwise. *Id.* at 107. The Second Circuit concluded that it was clear error for the post-conviction court to find that counsel made misrepresentations to the petitioner; rather, counsel's representations "were couched in the language of hope rather than of promise and were merely estimates made in good faith as to what [counsel] thought would" occur. *Id.* at 105, 108, 110. In addition, the petitioner had, during the plea colloquy, unambiguously confirmed his understanding that he might not be ordered to serve his sentence in the other jurisdiction. *Id.* at 106-08.

kind of objectively wrong plea advice—wrong when given, not wrong only in hindsight—that courts have deemed sufficient to warrant post-conviction relief. *See e.g., Lafler v. Cooper*, 566 U.S. 156, 161 (2012) (defendant rejected plea agreement on advice of counsel, and was then convicted after trial and received a more severe sentence, after counsel incorrectly advised that defendant could not be convicted of the most serious charge); *Missouri v. Frye*, 566 U.S. 134, 138-39 (2012) (trial counsel failed to inform defendant of plea offers, which expired); *Magana v. Hofbauer*, 263 F.3d 542, 544-45 (6th Cir. 2001) (trial counsel misinformed defendant about maximum sentencing exposure); *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007) (trial counsel gave defendant "clearly wrong" information about maximum sentencing exposure).

[¶20]   With respect to the prejudice prong, even if we considered counsel's advice to be constitutionally deficient, it would be difficult to conclude that Gordon has demonstrated that his plea was involuntary given his express acknowledgment during the Rule 11 colloquy that he understood that he could be sentenced to up to twelve years and that no one had made any promises to him about the sentence other than the State's promise to recommend a

sentence of not more than twelve years.[13]  *See Laferriere*, 1997 ME 169, ¶¶ 8, 12, 697 A.2d 1301.  A primary purpose of the detailed Rule 11 inquiry is to ascertain whether the defendant understands and accepts the consequences of the plea and whether the defendant has been promised or is relying on anything beyond the terms of the plea agreement placed on record.  A defendant's undisclosed expectation about the potential sentence cannot override what the defendant says on the record in response to the court's questions during a plea inquiry.

[¶21]  In addition, as the State argues, the post-conviction court found that Gordon would not have accepted the eight-years-straight offer even if his attorney had not advised him that a twelve-year sentence was unlikely if Gordon chose the cap agreement.  That finding is supported by the evidence that Gordon had rejected that same offer from the start, that Gordon wanted to obtain a sentence that included probation, and that even after the sentence was imposed, Gordon asked trial counsel to request a seven-year sentence.

---

[13]  Gordon does not argue that prejudice should be presumed based on a constructive complete denial of counsel under *United States v. Cronic*, 466 U.S. 648, 653-62 (1984). *See United States v. Smith*, 640 F.3d 580, 587 n.3 (4th Cir. 2011) (explaining that the general presumption that a guilty plea accepted after a Rule 11 colloquy is conclusive "does not obtain when voluntariness is attacked based on the constructive denial of counsel").

[¶22]  We agree with the post-conviction court that Gordon's claim that his attorney's advice constituted ineffective assistance of counsel fails to satisfy either prong of the *Strickland* standard.

## C.   Gordon's Attorney's Failure to Object to the Twelve-Year Sentence

[¶23]   We granted a certificate of probable cause on the additional question of whether Gordon was deprived of his right to the effective assistance of counsel given his attorney's failure to object at the time of sentencing to the twelve-year sentence that the court imposed.

[¶24]   It is telling that neither Gordon nor his attorney voiced any objection or even surprise in response to the sentence when the court imposed it.  It can reasonably be inferred that neither objected because both understood, as Gordon had confirmed at the time of his plea and again acknowledged in his testimony at the post-conviction hearing, that he was at risk of that sentence under the cap agreement with the State.

[¶25] Gordon appears to maintain that, had his attorney objected to the sentence when it was imposed, he would have been able to withdraw his plea. However, Maine Rule of Unified Criminal Procedure 32(d) provides that "[a] motion to withdraw a plea of guilty . . . may be made only before sentence is imposed."   The Dissent contends that Gordon's attorney should have

interrupted the court in the middle of its sentencing analysis by making an oral motion for Gordon to be allowed to withdraw his plea. Dissenting Opinion ¶ 39. Even if such a motion would have been timely for purposes of Rule 35 and even if counsel's failure to make it reflected ineffective assistance—questions we might well not decide in Gordon's favor—Gordon would not be able to demonstrate prejudice because he did not present any evidence during the post-conviction hearing to suggest that the court would have granted the motion had it been made.

[¶26] Gordon also appears to argue that his counsel's failure to object at the sentencing created a waiver or preservation issue as to his argument that the court's statements during the dispositional conference rendered his plea involuntary. *See Gordon*, 2021 ME 9, ¶ 15 n.8, 246 A.3d 170 (noting that the court's statements during the dispositional conference were not properly before this Court because Gordon did not "appeal from the order denying his motion to correct or reduce his sentence"). As we went on to explain, however, citing *State v. Adams*, 2018 ME 60, ¶ 11, 184 A.3d 875, Gordon's involuntariness argument was "collateral" to his sentence appeal but *could* be pursued in the context of a petition for post-conviction review, which is what Gordon has done. *Gordon*, 2021 ME 9, ¶ 15 n.9, 246 A.3d 170.

[¶27]  The post-conviction court decided that (1) Gordon's attorney's failure to object to the sentence at the time of sentencing did not fall below an objective standard of reasonableness and (2) there was no reasonable probability that the result of the proceeding—including the sentence and the appeal—would have been different if trial counsel had objected during the sentencing hearing.  Gordon's arguments do not persuade us otherwise.

The entry is:

Judgment affirmed.

———————————

JABAR, J., dissenting.

[¶28]  I respectfully dissent because Gordon was misled into pleading guilty by his attorney's faulty advice in reliance on statements made by the sentencing judge during a dispositional conference and he was never afforded the opportunity to withdraw his guilty plea.  The issue before us is the conduct of Gordon's attorney, not the conduct of the judge; however, the judge's statements to the parties during a dispositional conference place the attorney's representation in its proper context.  Because Gordon was misled—whether by his attorney, by the comments of the sentencing judge, or by a combination of

both—his guilty plea was not knowingly and voluntarily made. *See State v. Weyland*, 2020 ME 129, ¶ 29, 240 A.3d 841. Prior to the court imposing the sentence, but after the court completed its *Hewey* analysis, Gordon's attorney should have moved the court to allow Gordon to withdraw his guilty plea pursuant to Maine Rule of Unified Criminal Procedure 32(d).

[¶29] In a post-conviction petition, the defendant must demonstrate that (1) his attorney's representation fell below an objective standard of reasonableness and (2) his attorney's errors had an adverse effect on the defense. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984); *Ford v. State*, 2019 ME 47, ¶ 11, 205 A.3d 896. I believe that the defendant has demonstrated both prongs of the *Strickland* test.

 **A.     Attorney's Representation**

[¶30] Under the first prong of the *Strickland* test, the petitioner must demonstrate his attorney's deficient conduct. *Strickland*, 466 U.S. at 687-88. In Gordon's case, there is no dispute that, during a dispositional conference, the sentencing judge told the State's attorney and Gordon's attorney that he believed that the State's recommended sentence of eight years straight and the defense's recommendation of ten years, with all but six years suspended, with probation, were both "in the realm of reasonableness." With the parties at an

impasse regarding the two proposed sentence recommendations, the judge recommended that the parties instead agree to a plea of guilty with an agreed-upon cap. Ultimately, they agreed to a twelve-year cap.

[¶31]   In *State v. Sanney*, the Hawaii Supreme Court, referencing ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-2.1 (Am. Bar Ass'n 3d ed. 1999), adopted a standard that, "if a defendant pleads guilty or no contest in response to a court's sentencing inclination, but the court later decides not to follow the inclination, then the court must so advise the defendant and provide the defendant with the opportunity to affirm or withdraw the plea of guilty or no contest."[14]  404 P.3d 280, 291 (Haw. 2017).  The *Sanney* court noted that this rule would protect defendants from questioning "whether they were somehow misled into entering into a change of plea based on a judge's stated sentencing inclination" and would ensure that the record "is adequate to make a reasoned and informed judgment as to the appropriate penalty," including containing "adequate reasons . . . for [a] change in a trial court's sentencing inclination." *Id.* Although Gordon's sentencing judge may not have indicated a specific sentence

---

[14] An indicated sentence, or sentencing inclination, is a court's recommendation of "what sentence it will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." *People v. Clancey*, 299 P.3d 131, 135 (Cal. 2013) (alteration and quotation marks omitted).  A court making a sentencing inclination may never bargain with the defendant over the sentence, and the court should avoid indicating a sentence while plea bargaining is ongoing "unless the court is convinced the punishment proposed by the [State] is not an appropriate sanction." *Id.* at 138-39; *accord State v. Gordon*, 2021 ME 9, ¶¶ 31-32, 246 A.3d 170 (Jabar, J., concurring).

when he expressed his opinion that the State's and Gordon's attorneys' recommendations both were in the realm of reasonableness, his comments led Gordon's attorney to reasonably believe that he was indicating his inclination toward a sentence in the range between the two recommendations.

[¶32]  Notwithstanding my concern with the actions of the sentencing judge, the judge's conduct is not before us because Gordon's attorney failed to properly raise that issue below by appealing the denial of Gordon's motion to correct or reduce his sentence.  *Gordon*, 2021 ME 9, ¶ 15 n.8, 246 A.3d 170; *see generally* M.R.U. Crim. P. 35.  When Gordon ultimately sought review of his sentence, we stated that the issue surrounding the judge's conference statements and Gordon's attorney's advice following that conference could be raised only on post-conviction review.  *Gordon*, 2021 ME 9, ¶ 15 nn.8-9, 246 A.3d 170.  Here we are.

[¶33] The attorney's conduct is now before us.  The attorney's reliance on the judge's sentencing statements during the dispositional conference and advice to Gordon that he would receive a sentence consistent with those statements if he agreed to a cap plea, combined with the attorney's failure to move to allow Gordon to withdraw his guilty plea, constitute deficient representation below an objective standard of reasonableness.

[¶34]  It is obvious from the attorney's testimony at the post-conviction hearing that he relied on the judge's statements.  The attorney testified that he "didn't understand why a judge would recommend a cap and not . . . do one of the two or something in between."  The attorney was "encouraged" by the judge's statements, and expressed to Gordon after the conference that he believed that Gordon "would be no worse off by going in front of the judge with the cap than if he [was] to work something out by agreement with the state."  He believed he "was liberating the judge to do something along the lines of what [the State] and [the defense] had already talked about" and advised Gordon that the only way to receive a sentence within the range of the parties' recommendations was to agree to a cap proposed by the prosecutor at the judge's suggestion.[15]

[¶35]  The attorney testified that Gordon was receptive to that advice and ultimately agreed to the cap plea despite initial reservations.  The attorney further testified that, in discussing the plea options with Gordon, given "the way the dispositional conference played out, [they] wanted [the conference judge] to

---

[15]  The Court's decision states multiple times that Gordon's attorney advised him that the twelve-year cap plea was the only hope of receiving a split sentence.  *Supra* ¶¶ 4, 8.  This grossly understates the attorney's advice.  The attorney's advice to plead guilty with a twelve-year cap was given not because it was the only way for Gordon to receive a split sentence but because the attorney believed and expressed to Gordon that, if he agreed to the cap, he would receive a sentence within the range of the recommendations made during the dispositional conference.

be the sentencing judge." Finally, the attorney testified that he believed that Gordon would have agreed to the State's proposed eight-year-straight sentence had he advised Gordon to take it. This testimony demonstrates that the attorney believed Gordon would receive a sentence no greater than the State's recommendation of eight years straight if, and only if, he agreed to the cap in reliance on the judge's statements that the recommendations of the State and the defense were reasonable. This belief was expressed to Gordon.

[¶36] Gordon testified that his attorney informed him of the judge's comment that both parties' recommended sentences were reasonable and told Gordon that he "would get between what he asked for and what [the State] asked for since the judge said it was reasonable." Based on his discussions with the attorney, Gordon understood that the sentence would be between the State's and the defense's recommendations at the dispositional conference. He did acknowledge that the attorney made no guarantees. But when asked whether his attorney told him that he was risking more than eight years in prison if he agreed to a twelve-year cap, Gordon responded, "Not to my knowledge." Gordon, like his attorney, also testified that he would have taken the State's proposed eight years straight had his attorney recommended it, because otherwise he risked receiving a higher sentence.

[¶37]  Prior to imposing the sentence, the judge enunciated his *Hewey* analysis, concluding that the court would impose a sentence of twelve years straight.  Following the *Hewey* analysis and before the judge imposed the sentence, Gordon's attorney never interjected to raise the issue of the judge's statements during the dispositional conference and his mistaken belief that the judge would impose a sentence between what the judge considered to be two reasonable recommendations.  The attorney failed to notify the judge that he had advised his client to plead guilty based on the judge's sentencing comments made during the dispositional conference.  And most importantly, he never made a motion to allow Gordon to withdraw his guilty plea.[16]

[¶38]  The attorney acknowledged these mistakes during his testimony. When asked whether he orally stated that the contested sentencing hearing was the result of the dispositional conference statements regarding the defendant's ability to argue for an alternative, shorter sentence, the attorney admitted that he did not.  When asked whether, when the court completed its *Hewey* analysis, he moved for Gordon to be allowed to withdraw his plea, the attorney conceded

---

[16]  The fact, as the Court observes, that Gordon's attorney did not "voice any objection or even surprise in response to the sentence" is precisely the problem.  The attorney should have been surprised and should have objected.

that he did not because he did not believe that there was a legal basis to withdraw the plea.

[¶39]  This was a misreading of the law.  The attorney could have, and should have, moved the court to allow Gordon to withdraw his plea immediately following the court's *Hewey* analysis but before the judge imposed the sentence. A motion to withdraw a guilty plea may be made before a sentence is imposed. M.R.U. Crim. P. 32(d); *State v. Hillman*, 2000 ME 71, ¶ 7, 749 A.2d 758 ("A defendant may seek to withdraw a plea of guilty . . . *any time* before sentence is imposed." (emphasis added)).  The attorney never moved to allow Gordon to withdraw his plea and never attempted to conference with the court regarding the judge's comments during the dispositional conference and the attorney's reliance on those comments when advising Gordon to plead with a twelve-year cap in place—advice the attorney admits was "bad advice."

[¶40]  Instead, the attorney mistakenly believed that he could address in a Rule 35 motion the sentencing-inclination issue surrounding the dispositional conference statements.  *See* M.R.U Crim. P. 35.  Again, this was error, and the attorney acknowledged as much.  And despite believing that a Rule 35 motion was the proper vehicle to rectify the issue created by the comments made by the

30

judge during the dispositional conference, the attorney never appealed the denial of that motion.

[¶41]   I agree with the Court that an attorney's estimate of what the sentence might be is not necessarily grounds for post-conviction relief.  This case, however, is distinguishable from the cases that the Court cites to support that contention.  The Court likens Gordon's case to *United States ex rel. Scott v. Mancusi*, but the cases differ in critical aspects.  First, prior to accepting the defendant's guilty plea, the *Mancusi* sentencing court discussed with the defendant the judge's statements at an earlier conference regarding sentencing with the defendant.  429 F.2d 104, 106 (2d Cir. 1970).  The judge *gave the defendant multiple opportunities to confirm that he understood that his sentence may not be consistent with the statements made at the earlier conference.*[17]   *Id.*

---

[17]  The *Mancusi* sentencing judge, who had told the defendant's attorney in a conference prior to the plea colloquy that he would consider ordering a portion of the defendant's sentence to be served in another jurisdiction, made the following disclosure to the defendant prior to accepting his guilty plea:

> Your attorney has indicated to me that he's getting some correspondence from the correction or prison officials in Washington, D.C., which will indicate to the court what action they are going to take and he's going to submit that to me and after I have had this documentary evidence I will then have to make a determination as to whether or not I can send you back or whether you should go to Attica here in this state, are you aware of that?

*Mancusi*, 429 F.2d at 106.  When the defendant answered affirmatively, the judge went on:

The Second Circuit noted that, although the attorney had told the defendant that he "felt sure" that the judge would order the sentence to be served in another jurisdiction, "[t]he pleading colloquy . . . demonstrates that [the defendant] knew the matter was still far from settled." *Id.* at 108. In contrast, the court at Gordon's plea colloquy never discussed the statements made during the dispositional conference that Gordon relied upon, per his attorney's advice, in accepting the cap plea, or gave Gordon the opportunity to confirm that he understood that he may not be sentenced consistently with those statements.

[¶42] Second, when Mancusi learned that he may not receive the sentence that had induced him to plead guilty, he moved to withdraw his plea and, after the court denied the motion, the attorney again requested that the defendant be

---

> In other words, I am not telling you now and I have not told your attorney or the assistant district attorney that you are under all conditions, under all circumstances going back to Washington, D.C. That might not happen.

> *Id.* The defendant again said, "Yes." *Id.* Still, the court continued the exchange:

> The Court: You are aware of that?
> The Defendant: Yes, sir.
> The Court: It might well be, after reviewing the papers and probation investigation that I might feel that the interest of justice might be served by your being sentenced to serve your term here in New York State.
> The Defendant: Yes.
> The Court: Now, with that explanation do you want to say anything?
> The Defendant: Well, I don't guess I have anything to say.
> The Court: Has everything I said been understandable to you.
> The Defendant: It's been understandable to me.

> *Id.* Only then did the court proceed with questions ensuring that the defendant's plea of guilty was knowing and voluntary.

permitted to withdraw his guilty plea. *Id.* at 107. On appeal, the Second Circuit noted that an argument for withdrawal based on the defendant having been "misled" by his attorney's suggestion that he would be allowed to serve his sentence in another jurisdiction would have been "a strong one." *Id.* at 108-09. Here, Gordon's attorney failed to move for Gordon to withdraw his plea, which would have been justified based on the attorney having misled Gordon to enter a guilty plea. Unlike Mancusi, Gordon was never afforded the opportunity to affirm that he understood that the judge may sentence him outside the range that the attorney assured him the judge found reasonable, and Gordon's attorney never moved the court to allow Gordon to withdraw his plea after learning that the judge would not sentence him within that range.

[¶43] The other cases cited by the Court do not support its decision in this case. In both *United States ex rel. Bullock v. Warden, Westfield State Farm for Women*, 408 F.2d 1326, 1328-30 (2d Cir. 1969), and *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1096-97 (2d Cir. 1972), the defendants' attorneys were not relying on the statements of the sentencing judge when they advised their clients to plead guilty, and thus their clients could not reasonably have believed that the advice was anything more than the attorney's estimate of what the sentence might be. The context of Gordon's plea, including the judge's

statements regarding the reasonableness of the parties' sentencing proposals and the attorney's reliance on those statements, is of paramount importance in deciding whether Gordon knowingly entered a guilty plea.

[¶44]  The Court indicates in a footnote that Gordon's attorney's reliance on the judge's comments during the dispositional conference was not an "irrational interpretation" of the judge's comments regarding a reasonable sentence.  Court's Opinion ¶ 18 n.11.  This statement clearly demonstrates the dilemma before us.  On one hand, if Gordon's attorney was rational—and I assume that the Court means "reasonable"—in interpreting the judge's comments as a forecast of the likely sentencing range, then the judge's comments were an indication of his inclination to sentence Gordon to something between the two reasonable positions of the parties proposed during the dispositional conference.  And when the sentencing judge later failed to sentence Gordon according to the attorney's reasonable interpretation of the sentencing inclination, the attorney should have objected, asked for clarification, and ultimately moved the court to allow Gordon to withdraw his plea.

[¶45]  On the other hand, if Gordon's attorney was irrational, or unreasonable, in understanding the sentencing judge's comments during the

dispositional conference as an indication of the likely sentence, then he gave Gordon substandard advice when he conveyed to Gordon that if Gordon pleaded guilty the judge would impose a sentence of no more than the eight years straight proposed by the State during the conference. Again, when the judge completed the *Hewey* analysis, the attorney should have objected and notified the sentencing judge that he had misinterpreted the judge's comments at the dispositional conference and given Gordon faulty advice based on those comments. Either way, Gordon was misled into pleading guilty as a result of the judge's comments, his attorney's deficient counsel, or a combination of both.

[¶46] Gordon's attorney's failure to rectify this issue by moving to allow Gordon to withdraw his guilty plea prior to the court imposing the sentence was legal representation below an objective standard of reasonableness under the first prong of *Strickland*.

## B. Prejudice

[¶47] Under the second *Strickland* prong, the prejudice in this case is obvious. A defendant is entitled withdraw his guilty plea if it can be shown that his plea was not knowingly and voluntarily made. *See* M.R.U. Crim. P. 11; *State v. Pfeil*, 1998 ME 245, ¶ 7, 720 A.2d 573. In *State v. Weyland*, we stated that "[a]lthough relief should be granted liberally, a defendant does not have an

absolute right to withdraw a plea."  2020 ME 129, ¶ 17, 240 A.3d 841 (quotation marks omitted).  Rather,

> [t]rial courts evaluate four factors when deciding motions to withdraw pleas, and we similarly evaluate those factors when reviewing a trial court's exercise of discretion.  They are (1) the length of time between the defendant's entering the plea and seeking to withdraw it; (2) any prejudice to the State that would result if the plea were withdrawn; (3) the defendant's assertion of innocence; and (4) any deficiency in the Rule 11 proceeding.  No one factor is necessarily dispositive.  However, one factor's weight alone may tip the scale in the defendant's favor.

 *Id.* ¶ 18 (citations and quotation marks omitted).

[¶48]   It is true that, under the first and third factors, there was considerable time between Gordon's plea and sentencing, *see Hillman*, 2000 ME 71, ¶ 9, 749 A.2d 758 (stating that nineteen days between entry of plea and request to withdraw plea weighs in defendant's favor), and Gordon did not assert innocence, *see id.* ¶ 12 ("[T]he complete absence of a protestation of innocence in support of a motion to withdraw weighs against a defendant . . . .").  However, if Gordon had been afforded the opportunity to withdraw his plea, there would have been no prejudice to the State because it could have presented any evidence against Gordon at trial.  *See id.* ¶ 10 & n.5.

[¶49]  Further, and more importantly, the Rule 11 proceeding in this case was compromised.  Though "[w]e have never required strict compliance with

Rule 11 in order to uphold a guilty plea," the proceeding is defective "if the *total record* fails to establish adequately a factual matrix by which the plea is affirmatively shown to have been voluntarily and understandingly made." *Weyland*, 2020 ME 129, ¶ 29, 240 A.3d 841 (alteration and quotation marks omitted). Here, the facts indicate that Gordon's plea was not voluntary because it was induced by the attorney's misplaced reliance on the judge's statements at the dispositional conference and assurances that Gordon would receive a sentence no greater than the State's recommendation of eight years straight. In *State v. Rose*, the Missouri Supreme Court stated that "[i]f the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea." 440 S.W.2d 441, 443 (Mo. 1969) (quotation marks omitted). Similarly, in *Ex parte Otinger*, the Alabama Supreme Court held that a defendant should have been afforded an opportunity to withdraw his guilty plea when the trial judge's indication to defense counsel that defendant would receive a split sentence materially induced the defendant's guilty plea, but the judge later imposed a straight sentence. 493 So. 2d 1362, 1363-64 (Ala. 1986)

[¶50]  The errors committed by Gordon's attorney clearly had an adverse effect on the defense.  Why else would Gordon and his attorney indicate that Gordon would plead guilty only if the same judge who made the statements during the dispositional conference presided at the sentencing hearing?  Gordon was relying upon his attorney's misplaced advice.  Had the attorney acted immediately before the court imposed its sentence, "there is a reasonable probability that the result of the proceeding would have been different": Gordon would have been able to withdraw his guilty plea.[18]  *Ford*, 2019 ME 47, ¶ 20, 205 A.3d 896 (quoting *Strickland*, 466 U.S. at 694).

Paul D. Corey, Esq. (orally), Auburn, for appellant Mario Gordon

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2020-340
FOR CLERK REFERENCE ONLY

---

[18] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ford v. State*, 2019 ME 47, ¶ 14, 205 A.3d 896 (quoting *Strickland*, 466 U.S. at 694).